McAlpin v. The State.

An indictment, under the R. S. 1843, was as follows: The grand-jurors impanneled, &c., upon their oath, present that *A. B.*, on, &c., at the county, &c., aforesaid, and continuously from that day until the day of the finding of this bill of indictment, had and possessed a house, a room, a shed, and a tenement, situate in said county, and that said *B.* there, during all the time aforesaid, did keep and suffer his said house, room, shed, and tenement, to be used and occupied for gaming, contrary, &c. *Held,* that the indictment was good. *Held,* also, that to sustain the indictment, it was sufficient to prove that the defendant kept either of the places specified, for any length of time, to be used, &c., for gaming.

To sustain the indictment, it is not essential to prove that the gaming actually took place at the house, but the commission of the offense may be inferred from circumstances.

ERROR to the *Jefferson* Circuit Court.

Perkins, J.—The grand jury of *Jefferson* county returned into the *Jefferson* Circuit Court a bill of indictment against *John McAlpin*, reading as follows:

Tuesday,
February 1,
1853.

" The grand-jurors, impanneled, &c., upon their oath, present that *John McAlpin*, on, &c., at the county of *Jefferson* aforesaid, and continuously from that day until the day of the finding of this bill of indictment, had and possessed a house, a room, a shed, and a tenement, situate in said county; and that the said *McAlpin* there, during all the time aforesaid, did keep and suffer his said house, room, shed, and tenement, to be used and occupied for gaming, contrary," &c.

This indictment the defendant moved to quash for defects appearing, as he alleged, on its face; but the Court overruled the motion, and rightly. The indictment charges the offense in the language of the statute, and such an indictment, in a case like the present, was held sufficient in *The State* v. *Miller*, 5 Blackf. 502.

The cause was then tried by jury upon the plea of not guilty, and the defendant was convicted.

Upon the trial, and at the proper time, a bill of exceptions states, the defendant prayed the Court to instruct the jury: " That the charge as laid in the indictment,

viz., that the defendant did keep and suffer his said house, room, shed, and tenement, to be used and occupied for gaming, must be proved as laid, and proof of gaming in only one of those places laid in the indictment, will not warrant a conviction;" and further, "that said offense charged in said indictment is a continuous act, and must be proved," &c.; which instructions the Court refused to give.

In this the Court committed no error.

*Russell*, in his work on Crimes, vol. 2, p. 708, says:

"Although it be true, as above stated, that in order to convict a man of an offense, that offense must be completely averred in the indictment, and the evidence must correspond with and support the whole of the material averments, yet it by no means follows that it is necessary to prove the offense charged in the indictment to the whole extent laid; for it is fully settled that in criminal cases it is sufficient for the prosecutor to prove so much of the charge as constitutes an offense punishable by law." "The same distinction applies to the averments in the indictment. If an offense sufficient to maintain the indictment be well laid, it is enough, though other matters which would increase the offense are ill averred."

Applying this law to the case before us, the correctness of the decision below is manifest. The indictment charges that the defendant kept more rooms than one to be used for gaming. But if he kept one he was guilty of the offense. So it charges that he kept said rooms for a certain long period of time; but if he kept them, or any one of them, for such a purpose, for any length of time, the offense was complete. And in *Armstrong* v. *The State*, 4 Blackf. 247, it is decided that a jury may infer that a house is kept for gambling from the fact that the owner once permits gambling in it.

The bill of exceptions further states that after the verdict against the defendant was returned into Court he moved for a new trial, "because the verdict was contrary to the law and the evidence; that the evidence in this

case given to the jury as to losing or winning money was that the witness saw money on the table, but did not state whether money was lost or won."

The Court denied the motion.

No ground was shown for a new trial, and the Court did right, therefore, in refusing it.

The motion was based on the assumption that it was necessary, to make out the case, to show that gaming actually took place in the house kept for that purpose. Were that assumption correct, we think gaming might be inferred from circumstances, and that proof of the fact of losing or winning from actual observation would not be required; and such circumstances may have been proved in this case. But it appears by the case of *The State* v. *Miller, supra,* that it is not necessary that the fact of gaming having taken place in the house should be shown to make out the offense under the statute. The offense may be inferred from other circumstances. The point was raised in that case by way of objection to the indictment. The Court says: " The objection urged against the indictment is, that it does not allege that gambling had actually taken place in the room charged to have been kept for the purpose of gambling. This objection cannot be sustained. The offense created by the statute is the keeping or renting a room, &c., with the intention and purpose that gambling shall be carried on in it. The intention is a matter of proof; and if that can be established, it is immaterial whether the prohibited establishment shall find customers or not."

*Per Curiam.*—The judgment is affirmed with costs.

*J. W. Chapman,* for the plaintiff.

*D. S. Gooding,* for the state.