BLACK *v.* MERRILL ET AL.

REPORTS OF SUPREME COURT.—*Price Received by Reporter.*—The provision of the act of March 13th, 1875, Acts 1875, Regular Session, 126, that the reporter of the Supreme Court may not receive from a purchaser a greater price than three dollars per copy for the volumes of Indiana Reports published after the taking effect of said statute, is constitutional and valid, and the reporter cannot recover more than that sum per copy for such books, though he may have sold them for a higher price ; notwithstanding the facts that the reporter is not required by the terms of said act to publish more than the five hundred copies to be delivered by him to the State, and if he does publish a greater number, such additional copies are his individual property, and he is entitled to the exclusive copyright of each volume published by him after the same is published, and has obtained the copyright for the volume of which he has sold such copies. By his continuing in the office, accepting the benefits of said act, and publishing the reports after the taking effect thereof, his consent to such restriction is implied.

From the Marion Superior Court.

*C. Baker, O. B. Hord,* and *A. W. Hendricks,* for appellant.

*C. A. Buskirk,* Attorney General, and *R. D. Doyle,* for appellees.

WORDEN, J. — The question presented by this record, without taking up space in stating how it arose, is, whether the reporter of the decisions of this court is restricted to the sum of three dollars per volume as the price at which he may sell to individuals the volumes of reports prepared and published by him pursuant to, and after the taking effect of, the act of March 13th, 1875 (Acts 1875, Reg. Sess., 126), hereinafter noticed.

It was held by the court below that he was thus restricted, and that the. sum named was all that he could recover, though he had sold the volumes at a higher price.

By the eighth section of the act, its provisions are made to apply to all decisions made and reports published after the taking effect of the act. The fifth, sixth and seventh sections of the act only need be set out in order to an understanding of the question involved. They follow:

"Sec. 5. Whenever such decisions, ordered to be published, shall make not less than six hundred pages, exclusive of the appendix and index, said reporter shall add an index thereto, and shall cause the same to be bound in good law binding into a volume to be styled 'Indiana Reports,' and shall deliver forthwith to the secretary of state, five hundred volumes thereof, and the secretary of state shall cause the same to be distributed and disposed of as follows, to wit: two copies to the clerk's office of the circuit court of each county within this State, for the use of the courts of such county, and one copy to each college in this State, and the residue of such volumes he shall cause to be deposited in the law library of the Supreme Court of this State.

"Sec. 6. The secretary of state shall not receive such reports

from such reporter, unless the same shall fully comply in all respects with the provisions of this act, and on the delivery of such reports to such secretary, he shall deliver to such reporter a certificate stating the number of such reports received, and the volume thereof, and on presentation of such certificate to the auditor of state, he shall draw a warrant on the treasurer of state in favor of such reporter for the sum of three dollars for each volume of such reports delivered to the secretary of state, as shown by such certificate, which warrant shall be paid by the treasurer of state out of any moneys in the treasury not otherwise appropriated, and such reporter shall receive no other compensation, whatever, from the State for his services, or for such reports.

"Sec. 7. The reporter shall be entitled to the use of the manuscript opinions written by the judges, and of the records, briefs and other papers filed in the office of the clerk of the Supreme Court, for the purpose of making out his reports, and he shall also be entitled to the exclusive copyright of each volume published by him, after the same is published, and he shall be entitled to receive, for every volume of the size and description hereinbefore provided, such price as may be agreed upon between such reporter and the purchaser, not exceeding three dollars per volume, and it shall not be lawful for him to receive, directly or indirectly, or for any other person to demand or receive any greater price per volume; *Provided,* that nothing in this act be so construed as to prevent any newspaper of this State from publishing any opinion or abstract of any decision of said court, whether the same be directed to be published by the reporter or not."

The language of the seventh section of the act is quite explicit, and leaves no doubt that it was intended to restrict the reporter to the sum of three dollars per volume. But it is contended by the appellant that this was an unwarranted interference on the part of the legislature with private property; that the restriction was one which the legislature had no power to make, and that it was therefore void.

This proposition we proceed briefly to consider. It may not be out of place, first, to look at previous legislation on the subject.

The constitution does not provide for the office of reporter, but it provides (art. · 7, sec. 6), that "the General Assembly shall provide by law for the speedy publication of the decisions of the Supreme Court, made under this constitution."

The office of reporter, not being a constitutional one, may be abolished, or the rights and duties of the reporter, as such officer, may be changed at the will of the legislature. The legislature may, doubtless, provide for the publication of the decisions through an officer, or otherwise. But at the first session of the legislature after the adoption of the constitution, an act was passed creating the office of reporter. 1 G. & H. 536.

The seventh section of that act contained the same restriction as to the price at which the reports should be sold that is contained in the act of 1875.

Thus the matter stood until in 1865, when an amendment was made, fixing the maximum price at which the reports should be sold at four dollars and fifty cents. 3 Ind. Stat. 430. No further change was made, we believe, in respect to the point under consideration, until the act of 1875.

Thus it is seen that three different legislatures have assumed to fix the maximum price at which the reports should be sold. These acts of the legislature are entitled to respect, as expressing the views of a co-ordinate department of government upon the question of legislative power. Nevertheless, if an act of the legislature clearly violates the federal or state constitution, it is the right, as well as the imperative duty, of the judicial department, upon a proper case presented, to hold the enactment void.

It might, for the purposes of the case, be conceded that the legislature have not the power, without the consent, express or implied, of the parties affected, to deprive one person of his property and bestow it upon another, or determine the

price at which one shall sell his property to another. Such an interference with the rights of private property may not be within the legitimate province of legislation.

But does the act limit the price at which the reporter may sell the reports without his consent? .

Upon the taking effect of the act, he had his option to prepare and publish the reports upon the conditions prescribed in the act, or not to do it. He was not obliged to continue in the office, but having elected to continue in the office and publish the reports, he elected to do it upon the terms and conditions prescribed in the act. Having elected to take the benefit of the law, he took it upon the conditions imposed. His consent to the conditions is implied from his acceptance of the benefits of the act. He cannot accept the benefits and repudiate the burthens. A devisee is not obliged to accept a devise made to him in a will; but if he accept the devise he must do it upon and perform the conditions prescribed in the will. The case is quite analogous to those where charters are granted to corporations, in which terms and conditions are prescribed. If the charters be accepted, the terms and conditions must be performed. *Pennsylvania Railroad Co.* v. *Commonwealth*, 3 Grant Pa. 128. Where charters are granted to railroad or turnpike corporations, prescribing the rates of fare, freight or toll that may be charged, it is quite clear that these rates cannot be lawfully exceeded. By accepting such charters, the corporations agree to the limitations prescribed.

By the terms of the law in question, the reporter is entitled to the use of the manuscript opinions, records, briefs, and other papers filed in the office of the clerk of this court, for the purpose of preparing his reports. This is a privilege that no one else has. Reporting would seem to be impracticable without it, for the cost of procuring transcripts from the clerk of the opinions would probably exceed the profits of reporting in that way. The statute also provides that the reporter " shall also be entitled to the exclusive copyright of each volume published by him, after the same

is published." This provision does not, and cannot give the
reporter any copyright in the volumes. The copyright can
only be acquired by taking the steps required for that pur-
pose by the act of Congress. The most that can be said of
the provision is, that it relinquishes to the reporter any
right which the State might otherwise have of acquiring a
copyright in the reports. The State is to · take of the
reporter five hundred copies, which he is to furnish at the
stipulated price. These are the privileges conferred upon
the reporter. The burthen .is that he shall not sell the
reports at a price beyond that prescribed. As before stated,
he takes the privileges subject to the burthen. By accept-
ing the privileges, he impliedly assents to the burthen.

But it is claimed that as by the law he is not obliged to
publish any more than the five hundred copies to be furnished
the State, if he publish more, which he may or may not do,
at his option, they become his individual property, and the
State cannot impose terms of sale upon him. This view
does not, in our opinion, change the aspect of the question.
There is a fallacy, as we think, that underlies the argument.
It is true that the reporter is not, by the terms of the law,
bound to publish more than the number to be furnished the
State, though the legislature evidently expected he would
do so, and that if he does so they become his individual
property; but the argument overlooks the fact that if he
does publish more he does it by virtue of the privileges con-
ferred by the act and under the authority thereof. Avail-
ing himself of the rights conferred upon him by the act to
issue volumes beyond the number required by the State, he
cannot repudiate the condition upon which those rights were
conferred upon and exercised by him.

It is also urged that as the reporter is entitled, by the
consent of the State, to copyrights in the reports, the subject
is governed exclusively by the acts of Congress, and, there-
fore, that the portion of the law limiting the price is void.

The purpose, and only purpose so far as occurs to us, of a
copyright in a book, is to secure to the writer or proprietor,

or to his executors, administrators, or assigns "the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing and vending the same" for the period prescribed. Rev. Stat. U. S. 965.

When a book is published under the authority of a State, by virtue of a law of the State which restricts the author or publisher to a certain price in the sale of the book, we do not see how the restriction can be removed by securing a copyright in the book. The object of the copyright is to prevent others from pirating the work.

It was not the object of the federal constitution, or the acts of Congress made in pursuance thereof, to confer upon the author or proprietor of a book any new rights or immunities in respect thereto, which he did not possess before securing the copyright, but to save to him the sole enjoyment of the fruits of the work without interference or piracy from others. We do not think the restriction is at all in conflict with the constitution or the acts of Congress on the subject of copyrights, nor that it is void for any other reason. The case was, as we think, correctly decided in the court below, and the judgment must be affirmed.

The judgment below is affirmed, with costs.

PETTIT J., dissents.