WELLING *v.* MERRILL ET AL.

REPORTS OF SUPREME COURT.—*Price.*—The limitation fixed by the act of March 13th, 1875, of the price at which the reports of the Supreme Court of Indiana published under that act may be sold by others than the reporter is valid; and no more than three dollars per copy can be recovered for such reports by any seller thereof, though the buyer may have contracted to pay a higher price.

From the Marion Superior Court.

*C. A. Buskirk,* Attorney General, and *R. D. Doyle,* for appellant.

*C. Baker, O. B. Hord, A.W. Hendricks* and *J. B. Black,* for appellees.

WORDEN, J.—Welling bought of Merrill & Co. thirteen copies of the forty-ninth volume of Indiana Reports, prepared and published since the taking effect of the act of March 13th, 1875 (Acts 1875, Reg. Sess., 126), hereinafter noticed, at the rate of four dollars and fifty cents per copy, for the amount of which he gave them his note, on which this action was brought. Answer setting up the facts and claiming a want of consideration to the extent of one dollar and fifty cents per copy.

The question arising in the record is, whether Merrill & Co. were authorized under the law to sell the reports at a price greater than three dollars per copy. The court below held that they were, and they were allowed to recover the full amount of the note.

The statute above mentioned provides, that the reporter "shall be entitled to receive, for every volume of the size and description hereinbefore provided, such price as may be agreed upon between such reporter and the purchaser, not exceeding three dollars per volume, and it shall not be lawful for him to receive directly or indirectly, or for any other person to demand or receive any greater price per volume."

Substantially the same provision is found in the act of 1852 (1 G. & H. 536, sec. 7), and in that of 1865 (3 Ind.

Stat. 430, sec. 7), except that in the latter act the price fixed is four dollars and fifty cents per volume.

In the case of *Black* v. *Merrill*, 51 Ind. 32, we have decided that the reporter is bound by the provision of the statute limiting the price, because he must be deemed to have assented thereto by publishing the reports under and by virtue of the provisions of the act.

The limitation as to price, it will be seen, applies to sales made by any other person, as well as to those made by the reporter.

Does any other person who may sell the reports stand in a different situation from that occupied by the reporter, in respect to the question involved? We are of opinion that he does not.

The reports were brought into existence under and by virtue of the statute, which confers upon the reporter the use of the manuscript opinions, briefs and papers, and the right of the State to procure copyrights, and limits the price at which he or any other person may sell them. It was the intention, and within the power of the legislature, while it gave these privileges to the reporter, thus furnishing him facilities for preparing the reports which are enjoyed by no one else, and thus enabling him to secure a monopoly therein by means of copyrights, to limit the price at which they should be sold. The legislature, doubtless, deemed it necessary to limit the price at which others than the reporter should sell the reports, lest, notwithstanding the limitation upon the reporter, the price at which they might be held in the book markets should make them unreasonably expensive to those who might need them.

The reports in question could have had no existence but for the law under which they were produced, and the same law fixes the price. Reports, to be sure, might have been produced without the law, but not those in question. Reports might have been published by private persons without the facilities and advantages conferred upon the reporter, and they would not be governed by the law in question,

because not produced under it. The law is a public one, which every person is bound to notice.

No person can have the title to a book or other property thrust upon him without his consent. If he take the title to these reports, whether by purchase or otherwise, knowing, as he must, the limitation attached to the price at which he may sell them, he must be deemed to consent to the limitation, and he takes the property subject thereto. The limitation follows the property into whosesoever hands it may fall, because that is a part of the law of its creation and being, and all persons taking it must take it subject to that law.

The law is entirely different from one in which the legislature should assume to fix the price of property not to be created or brought into existence under the law fixing the price, but property generally, as a bushel of wheat, a pound of butter, or a volume of reports.

Here the legislature have provided for the production of certain property, the reports, which may or may not be produced, at the option of the reporter, who is not bound to act as such unless he choose, and which may or may not be bought or sold by or to any one, as he may choose, and fixing the maximum price at which the property may be sold, if produced and sold. We cannot say that the law violates any provision of the constitution, or that it is for any other reason void.

Pennsylvania has a similar statute fixing the price of the reports, however at four dollars per volume, making it a penal offence for the reporter or his vendee, or any other person, to sell for a higher price, and subjecting the party offending to a penalty of two hundred dollars. 2 Brightly's Purdon's Digest, 1339. We are not advised whether any question has arisen in the courts of Pennsylvania under this provision of their statute. We quote, however, as having a bearing upon the question, the following passage from the opinion of the court, as delivered by BLACK, C. J., in the case of *Sharpless* v. *Mayor of Philadelphia,* 21 Penn. St. 147, 161:

"We are urged, however, to go further than this, and to hold that a law, though not prohibited, is void if it violates the spirit of our institutions, or impairs any of those rights which it is the object of a free government to protect, and to declare it unconstitutional if it be wrong and unjust. But we cannot do this. It would be assuming a right to change the constitution, to supply what we might conceive to be its defects, to fill up every *casus omissus*, and to interpolate into it whatever in our opinion ought to have been put there by its framers. The constitution has given us a list of things which the legislature may not do. If we extend that list, we alter the instrument, we become ourselves the aggressors, and violate both the letter and the spirit of the organic law as grossly as the legislature possibly could. If we can add to the reserved rights of the people, we can take them away; if we can mend, we can mar; if we can remove the landmarks which we can find established, we can obliterate them; if we can change the constitution in any particular, there is nothing but our own will to prevent us from demolishing it entirely.

"The great powers given to the legislature are liable to be abused. But this is inseparable from the nature of human institutions. The wisdom of man has never conceived of a government with power sufficient to answer its legitimate ends, and at the same time incapable of mischief. No political system can be made so perfect that its rulers will always hold it to the true course. In the very best a great deal must be trusted to the discretion of those who administer it. In ours, the people have given larger powers to the legislature, and relied, for the faithful execution of them, on the wisdom and honesty of that department, and on the direct accountability of the members to their constituents. There is no shadow of reason for supposing that the mere abuse of power was meant to be corrected by the judiciary."

We are of opinion that the judgment of the court below was wrong, and must be reversed.

The judgment below is reversed, with costs, and the cause remanded for further proceedings in accordance with this opinion.

Pettit, J., dissents.

## On petition for a rehearing.

Biddle, J.—The argument on petition for a rehearing places the Indiana Reports, as books, upon the same footing with the commodities of general commerce; as if the State had no more power over them than over the ordinary products of industry, or could no more regulate the price and sale of them than it could the general articles of trade. This is ingenious, but it is not sound. In the first place, the State owns the public records of the Supreme Court, out of which the books are made. These records are subject to the legislative will. The State may regulate the manner in which they shall be produced, preserved, reported, and published, either in manuscript, as transcripts of the records, or in printed volumes, and may regulate the price of them per volume in printed books, as well as it may fix the fees of an officer in each individual case for producing a transcript of them. We can see no difference, in principle, between regulating the price the reporter shall receive for a printed volume of reports, and fixing the fees the clerk shall have for a manuscript copy of the same decisions. The reporter is as much an officer of the law as the clerk. His office is created, and his duties prescribed, by law. He accepts it with a full knowledge of its obligations, emoluments and burdens. He has no more power to charge a higher price than that fixed by law for the books which the law authorizes him to produce, and aids him in producing, than the clerk has to charge more fees than the law allows him for the transcripts of the same matter.

But it is urged, that, although the legislature may fix the price of the reports as to sales made by the reporter—indeed the point is quite conceded—yet it cannot regulate

the price in the hands of the bookseller.   This argument is
more plausible than solid.  It were, indeed, in vain to restrict
the price of the books as to the official reporter, and allow
the unofficial bookseller to charge what he pleased for them.
This would defeat one of the main objects of the act, namely,
to bring the law, as interpreted by the highest tribunal in
the State, to the profession, and before the people, as widely
and cheaply as practicable.   Besides, if the law allowed
every unofficial person to make trade and merchandise of
the reports, and charge whatever price they could get,
while the official reporter was restricted to the price fixed
by law, it would be unjust to that officer, who is entitled to
the copyright.   As well allow unofficial persons to go into
the clerk's office, copy the records at will, and sell the tran-
scripts for any price they could get.   No doubt, any person
could print and publish and sell the reports of the decisions
of this court, by purchasing the transcripts of them from the
clerk, but they could not legally obtain them in any other
way.   It is plain, then, that the fixed price of the reports
must be maintained in the hands of all persons, or one of
the most beneficial purposes of the law would be defeated.
We think it is as much within the power of the legislature
to fix the price of the reports published by the official
reporter, as it is to fix the amount of the fees or the salary
of any other public officer; and all persons must be held to
know and obey the public regulation.   Neither the official
reporter nor the unofficial bookseller has any right to com-
plain; for they can both see it written in the statute book—
the one before he undertakes to manufacture the book, and
the other before he undertakes to sell it—that the reporter
" shall be entitled to receive, for every volume of the size
and description hereinbefore provided, such price as may be
agreed upon between such reporter and the purchaser, not
exceeding three dollars per volume, and it shall not be lawful
for him to receive directly or indirectly, or for any other per-
son to demand or receive any greater price per volume."

The petition is overruled.