Reed, J.,
delivered the opinion of the court.
Plaintiff and defendant had formerly been husband and wife ; were married in the city of Baltimore in 1877. Were divorced in 1892. At the time of the marriage plaintiff was possessed of considerable property, defendant had none and was badly in debt. The uncontradicted testimony is that immediately after marriage his wife was furnishing him with large sums of money for his support and to pay debts that •he owed previous to marriage. The evidence of the defendant is as follows: ■
“ I paid all the premiums on this policy. I always paid them; had to borrow the money; my children (by former marriage) loaned me the money over and over again to pay it. I paid nearly five thousand dollars in premiums on the policy, — just five thousand. Mr. Sheets borrowed so many thousand dollars from me to pay his debts before he married *451 me; I was giving him hundreds of dollars a week, everything I could rake and scrape. I gave him, four months after I was married, $4,000, between four and five thousand dollars; I can’t remember just the amount now; then in August, in one day, I gave him $950, and so it went all the time. The policy of insurance was taken out to secure that. That is what it was done for, because I had lost «o much money through him.
“ Q. State the arrangement that was made between you. A. I lost so much money through him that he said I could have his life insured, or he would try and make it up in that way. I did not think he ever could do it in any other way. I had his life insured and had everything done ; he did not attend to it at all. I did. It was from Dr. Clements, a friend of the family; he didn’t know Dr. Clements until I introduced him to him, and he had him examined and I paid the whole thing myself, and he never paid it at all. If he paid the first, I gave him the money to pay it, because the poor man hadn’t a cent; he could not buy a shirt unless I gave him the money ; he had nothing. Q. Did he ever pay you back that $4,000 ? A. He never paid, never. The purpose of this insurance was to secure that money to me. It was for my benefit and my children, and not for him at all; he never demanded this $1,774 of me ; never spoke to me about it; I never heard of it except right here.”
The plaintiff in his testimony said: “ I went into bankruptcy, became insolvent in 1879.”
In April of that year plaintiff in error applied to and obtained from the Home Life Ins. Co. of lSTew York a policy of insurance of $10,000 on the life of her husband, the annual premium being $430. The premiums were paid until 1891, amounting in the aggregate to over $5,000. It is conceded that these payments were all made by the wife except the first; in regard to that the evidence was as follows :
Mr. Sheets : “ Mrs. Sheets did not pay all of the premiums. I paid some. I did not pay all; I paid the first premium, *452 $400.” On cross-examination he said : “ I did not pay any other than the first premium out of my own pocket.”
She : “ If he paid the first, I gave him the money to pay it, because the poor man hadn’t a cent. He could not buy a shirt unless I gave him the money; he had nothing.”
The fact that he was insolvent and went into bankruptcy about that time, as testified by himself, would support the truthfulness of the statement of the wife.
Not being able to continue the payment of premiums in August, 1891, Mrs. Sheets surrendered the policy to the company for a cash payment of $1,784, which is the subject-matter of this controversy.. The former husband sued the wife to recover it. The case was tried to the court with a finding and judgment for the plaintiff below (defendant in error).
The several errors may, very properly, be consolidated in one — that the court erred in finding for the plaintiff.
In arriving at the proper conclusion, the situation of the parties respectively, and the pecuniary condition of each, the fact that a bankrupt and insolvent man married a widow with property and children, and at the very outset of wedded life commenced to draw large sums from the estate of the wife, without return or contribution, would explain the motive that induced the wife, having confidence in the ability of the husband, if living, to retrieve the past, to protect herself and children from inevitable loss in case of his death, to take up a policy upon his life, the benefits of which, in case of his death, to accrue to herself and reimburse the estate.
The character of the contract of insurance and attendant circumstances are also to be considered. The portion of the policy necessary to he considered is as follows :
“ The Home Life Insurance Company by this policy of assurance, in consideration of the representations and agreements contained in the application therefor, and of the sum of four hundred and thirty dollars and —■ cents, to be paid on or before the delivery of this policy by Selenci A. Sheets, and of the annual premium of four hundred and thirty dol *453 lars and — cents, to be paid at its office in the city of New York, on or before the 22d day of April, at 12 o’clock noon, in each and every year during the continuance of this policy, does assure the life of George T. Sheets, of Baltimore, State of Maryland, in the amount, of ten thousand dollars, for the term of life, with participation in profits. And the Home Life Insurance Company does hereby promise and agree to and with the said Helena A. Sheets to pay the sum assured (less the balance of the years’ premiums, if any, and any indebtedness to the company on account of this contract, or for any loan made on said policy) at its office, in this city, to her, or in the event of her death prior to the death of said George T. Sheets, to -the then surviving children of the said Helena A. Sheets, share and share alike, or in the event of no children surviving, then to the legal representatives of the said Helena A. Sheets, within sixty days after due notice and satisfactory proof of loss and interest, in accordance with the terms of this contract.”
The wife, aside from the marital relation had, by reason of the advances of money made to him, an insurable interest in the life of the husband. Cammack v. Lewis, 15 Wall. 643; Conn. Mut. Ins. Co. v. Luchs, 108 U. S. 498; Brockway v. Conn. Mut. Ins. Co., 29 Fed. Rep. 766.
The indebtedness of the husband to the wife at the time the policy was obtained is conceded as well as established by evidence, consequently was not open to the charge of being a wagering contract. The husband acquiesced in it and participated in securing it as security and protection to the wife for money borrowed by him.
There is no ambiguity in nor necessity of construing the contract. It is as plain as language can make it. The wife is the applicant and benefieiary. The contract is made with her and in case of her death descended to her children ; in absence of children, to her legal representatives. That she had paid at the time of" its suirender about $5,000 as premiums was admitted. Admitting that the husband paid one premium with his own money does not change the contract *454 nor in any way affect it. Triston v. Hardy, 14 Beav. 232; Burridge v. Roe, 1 Y. & C. (Chy.) 183.
Under the circumstances and conditions shown, the wife was the absolute and sole owner of the policy of insurance; her title was as absolute as that to any other property bought and owned by her. Triston v. Hardy, supra; Glanz v. Goeckler, 104 Ill. 573.
“ A policy of insurance is a chose in action governed by the same principles applicable to other agreements involving pecuniary obligations.” Bliss on Life Ins. 506; Hutson v. Merrifield, 51 Ind. 34.
The policy was assigned like any other chose in action, and the wife being the owner could legally transfer either absolutely or hypothecate it as security and deal with it in any manner she saw fit. Bliss on Life Ins. 506; Hutson v. Merrifield, supra; Ashley v. Ashley, 3 Simons (Eng. Chy.) 149; St. John v. Ins. Co., 3 Kern. (N. Y.) 31; St. John v. Ins. Co., 2 Duer (N. Y.) 419; Palmer v. Merrill, 6 Cush. 282.
The policy being of this character and subject in the hands of the owner to all the incidents attaching to any other chose in action, it was immaterial whether she commuted it for cash and surrendered it to the company, or sold or pledged it to a third party. Having the absolute control, she could by contract with the other party rescind and cancel it, and the proceeds would be as absolutely hers as' though derived from the sale of any other part of her property.
The fact that the insurance company, through excess of caution, required the husband to acquiesce in the transaction and release all claims, and that he did so, could in no way affect the legal rights of the wife. The contract was one in which he had no legal interest or right of control.
The judgment of the district court will be reversed and the cause remanded.

Reversed.