SCHMITT, SUPERINTENDENT OF POLICE, v. F. W. COOK BREWING COMPANY.

[No. 23,439. Filed June 28, 1918. Rehearing denied November 19, 1918.]

1. CONSTITUTIONAL LAW. — *State Constitution.* — *Limitation of Power.*—The state Constitution is a limit of power that divides the sovereign power of the people into the several departments of government, and as the people possess all the power except that granted to the United States by the federal Constitution, they may pass any law not in violation of the limitations of the state Constitution and not in violation of the parts of the federal Constitution applicable to the state. p. 625.

2. CONSTITUTIONAL LAW. — *Validity of Statute.* — *Power of Courts.*—In determining the constitutionality of a statute, the Supreme Court is bound by the Constitution, and has nothing to do with the wisdom or unwisdom of the legislative act; and although a statute may be repugnant to general principles of justice, liberty and rights not expressed in the Constitution, the court has no power to strike it down. pp. 626, 630.

3. CONSTITUTIONAL LAW. — *State Constitution.* — *Limitation of Power.*—The people in establishing a state Constitution not only limit the power of their official agencies, but their own power as well. p. 626.

4. INTOXICATING LIQUORS.—*Police Power.*—The liquor traffic is within the police power of the state. pp. 627, 631.

5. CONSTITUTIONAL LAW. — *Intoxicating Liquors.* — *Prohibition Law.*—*Validity.*—The Prohibition Law (Acts 1917 p. 15), prohibiting the manufacture and sale of intoxicating liquors, is not violative of the state or federal Constitutions as depriving a brewing company of property rights under its charter, since charter rights, license rights and contract rights are all subject to the inherent power of government to protect the health, morals or welfare of the public. pp. 627, 634.

6. COURTS.—*Stare Decisis.*—*Rule of Property.*—*Police Power.*—The principle of *stare decisis* has no application to the police power, because there can be no property rights which are not subject to this power, since such principle is a rule of property the use of which does not affect the public welfare. p. 628.

7. CONSTITUTIONAL LAW.—*State Constitutional Convention.*—*Intoxicating Liquors.*—*Rejection of Prohibition.*—*Effect.*—There is no limitation in the Constitution against the complete prohibition of the manufacture and sale of intoxicating liquors by

reason of the fact that a provision on the subject was proposed to the constitutional convention and rejected.    p. 632.

8.   INTOXICATING LIQUORS.—*Prohibition.*—*Power of States.*—The several states, under their constitutions and the federal Constitution, have power to prohibit the manufacture and sale of intoxicating liquors and to provide such means for the enforcement of prohibition as seems expedient to the legislature. p. 633.

9.   STATUTES.—*Title.*—*Prohibition Law.*—*Constitution.*—The Prohibition Law (Acts ·1917 p. 15), entitled "An act prohibiting the manufacture, sale, gift, advertisement or transportation of intoxicating liquors except for certain purposes and under certain conditions," is not violative of the constitutional provision that every act shall embrace but one subject and matters properly connected· therewith, which subject shall be expressed in the title.   p. 634.

10.   CONSTITUTIONAL LAW. — *Statutes.* — *Prohibition Law.*—The Prohibition Law (Acts 1917 p. 15) is not void on the grounds that it gives the right to registered pharmacists to deal in intoxicants under certain restrictions, and because those who have liquors manufactured in the state which are in bond may have possession, pay tax and dispose of such liquors outside of the state, since the "privileges and immunities" section, the "class" section and the "general law" section of the Constitution are not violated if an act is reasonably designed to protect the health, morals or welfare of the public.   p. 635.

From Vanderburgh Superior Court; *Fred M. Hostetter,* Judge.

Suit by the F. W. Cook Brewing Company against Edgar Schmitt, as superintendent of police of the city of Evansville.   From a judgment for the plaintiff, the defendant appeals.   *Reversed.*

*Phil C. Gould, Ele Stansbury,* Attorney-General, *R. C. Minton, Wayne B. Wheeler,* for appellant.

*Philip W. Frey, Robinson & Stillwell, Charles E. Cox* and *Baker & Daniels,* for appellee.

TOWNSEND, J.—Appellee brewing company obtained a permanent injunction against appellant superintendent of police of the city of Evansville preventing the enforcement of the Prohibition Law, Acts 1917 p. 15.

Appellant's demurrer to the complaint was overruled. He refused to plead further and judgment was rendered.

No question is raised as to the jurisdiction of a court of equity and, owing to the alleged property rights and to avoid a multiplicity of actions, the cause will be considered.

The sole question presented is the constitutionality of the act. It is claimed that the legislature has no power under our Constitution to prohibit the manufacture and sale of intoxicating liquors. This contention is erroneous; for it is admitted that the legislature may refer this to the people in county, township, city, or ward units and, if the majority desire, they may impose prohibition upon the minority, and it is admitted that this would be constitutional. This amounts to admitting that the majority may inflict on the minority that which is forbidden by the Constitution. This is based on the erroneous assumption that a state Constitution is a grant of power and that when a legislature assembles something is taken from the people by it and something is left at home in the way of legislative function.

It is fundamental that a state Constitution is a limit of power. It simply divides sovereign power of the people in the state into the several departments of government and all power inheres in the people, and they possess all of it except that which is granted to the United States by the federal Constitution, and they may pass any law which is not in violation of the limitations in the state Constitution and not in violation of parts of the federal Constitution applicable to the states.

If the present Constitution provided that all the people of the state should assemble once in two years, instead of the legislature, to enact laws, and all other pro-

visions of the Constitution remained as they now are, it could not be that this body would have greater legis- lative power than the present legislative body. To admit this is to destroy the limitations in the Constitu- tion and leave the minority unprotected. The very pur- pose of the limitations is to protect the people against themselves. The limitations are not to protect the people against the legislature alone. That protection is afforded by elections every two years. If the limita- tions in the Constitution are not sufficient to protect the minority against the majority, that is for the conven- tion. The legislature is just as supreme in the legis- lative field as all the people would be. Both are bound by the limitations in the Constitution.

This court is bound by the same Constitution and has no right to curtail legislative authority this side of the expressed limitations in it. Nor has this court power to revolutionize the fundamental law by reading limitations into it. This court has noth- ing to do with the wisdom or unwisdom of the legislative act. A law may be repugnant to gen- eral principles of justice, liberty and rights not expressed in the Constitution, and yet the courts have no power to strike it down. *State* v. *Gerhardt* (1896), 145 Ind. 439, 450, 44 N. E. 469, 33 L. R. A. 313; *Praigg* v. *Western Paving, etc., Co.* (1896), 143 Ind. 358, 363, 42 N. E. 750; *Hirth-Krause Co.* v. *Cohen* (1911), 177 Ind. 1, 12, 97 N. E. 1, Ann. Cas. 1914C 708. The remedy in such a case is with the people in the legislative depart- ment or in convention forming a new Constitution. Mr. Cooley says: "By the Constitution which they (the people of the state) establish, they not only tie up the hands of their official agencies, but their own hands as well." Cooley, Constitutional Limitations (7th ed.) 56.

No provision of our Constitution has been pointed out which forbids the passage of laws to protect the

health, morals, or welfare of the people in con-
4. nection with the traffic in intoxicating liquor,
even though such laws destroy previously recog-
nized property without paying for it. That the liquor
traffic is within the police power of the state no one
denies. When this is admitted, there must follow the
power to take such steps as are reasonably suitable to
carry out this purpose.

There is no difference in constitutional principle be-
tween the prohibition of the sale of intoxicating liquor
as a beverage and the prohibition of the manu-
5. facture in order to stop the sale. The thing
aimed at is the traffic in liquor as a beverage.
If the people of the state, in order to stop the traffic in
the beverage, deem it necessary to stop the manufacture,
they have a right to do this so far as any limitations in
our Constitution are concerned. When it is admitted
that by local option ninety-two counties in the state may
forbid absolutely the sale of intoxicating liquor without
violating the provisions of the Constitution, it then fol-
lows that, in order to accomplish the same purpose, the
people of the state may prohibit the manufacture. He
who has a charter from the state to manufacture is de-
prived of his property, in part at least, when he loses the
opportunity to sell in ninety-two counties of the state.
From the standpoint of the constitutional limitations,
there can be no difference in principle between the de-
struction of one dollar's worth of property and one mil-
lion dollars' worth. Charter rights, license rights, con-
tract rights are all subject to the inherent power of gov-
ernment to protect the health, morals, or welfare of the
public. *Skelton* v. *State* (1909), 173 Ind. 462, 468, 89
N. E. 860, 90 N. E. 897; *Moore* v. *City of Indianapolis*
(1889), 120 Ind. 483, 491, 22 N. E. 424; *Boyd* v. *Ala-
bama* (1876), 94 U. S. 645, 24 L. Ed. 302; *Pittsburgh,*

*etc., R. Co.* v. *Chappell* (1914), 183 Ind. 141, 147, 106 N. E. 403, Ann. Cas. 1918A 627.

It is also insisted on behalf of appellee herein that it has been decided by this court that there is no power to prohibit the manufacture of intoxicating liquor under our Constitution, and that the case of *Beebe* v. *State* (1855), 6 Ind. 501, 63 Am. Dec. 391, and a few cases following, settle that question. It cannot be determined by those cases on what principle the court was acting. The question stood undecided for three years and then the law was pronounced void without assigning any reasons as to whether it was considered void under the state Constitution or federal Constitution. That law in some of its particulars would have been void at that time under the federal Constitution, but since then there have been passed by federal Congress the Wilson Act and the Webb-Kenyon Act, both of which have been upheld by the Supreme Court of the United States. *Wilkerson* v. *Rahrer* (1891), 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572; *Clark Distilling Co.* v. *Western, etc., R. Co.* (1916), 242 U. S. 311, 37 Sup. Ct. 180, 61 L. Ed. 326, L. R. A. 1917B 1218, Ann. Cas. 1917B 845. That law also provided for official agencies to dispense liquor, thus creating a monopoly on the part of the state in the traffic, and it may have been considered void for that reason. But since that time public monopolies have been justified in the control of intoxicating liquor upon the ground that the nature of the traffic warrants its entire prohibition. 15 R. C. L. 267, 268, and authorities there cited.

The principle of *stare decisis*, if it existed, has no application to the police power, because there can be no property rights which are not subject to this 6. power. In *Pittsburgh, etc., R. Co.* v. *Chappell, supra,* 146, this court said: "A long and firmly settled principle of law which has grown out of a well

ordered civil society is that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated that it shall neither encroach injuriously on the equal enjoyment of their property by others who have an equal right to the enjoyment of their property, nor be injurious to the community. The law is also so fixedly settled as to be beyond controversy that rights and privileges arising from contracts with a state are subject to regulations for the protection of the public health, the public morals and the general safety of persons and property, in the same sense as are all contracts and all property whether owned by private persons or by corporations. Laws carrying these principles into effect in particular instances are but a proper exercise of the police power by the legislature and are not to be hindered or overthrown by the constitutional limitations named as is claimed by counsel. Indeed the legislature cannot contract away its police power—the power to legislate for the protection of the lives, health, and property of the citizens of the State." And in the case of *King* v. *Inland Steel Co.* (1911), 177 Ind. 201, 212, 96 N. E. 337, 97 N. E. 529, this court said: "The rule of *stare decisis,* which counsel invoke to induce us to adhere to those decisions, cannot chain us to error. That may be so when decisions have become a rule of property, but not in decisions involving a subject-matter such as here affected." If this were not so, mistaken decisions would destroy that very power of society to protect itself and a new Constitution would be created by the courts. Courts cannot decide away that which the state cannot contract away. Courts cannot make a new fundamental law by erroneously reading limitations into the Constitution not therein expressed. The principle of *stare decisis* is a rule of property the use of which does not affect the public welfare. It cannot be

invoked to shut off police power. *State, ex rel.* v. *Aiken* (1894), 42 S. C. 222, 20 S. E. 221, 26 L. R. A. 345.

There is no spirit pervading the Constitution outside of the expressed limitations in it which enables this court to declare a law void. In the case of *City of Logansport* v. *Seybold* (1877), 59 Ind. 225, Judge Perkins, speaking for the court, at page 227, quotes from *Churchman* v. *Martin* (1876), 54 Ind. 380, as follows: " 'By the constitution of the State the legislative authority is vested in the general assembly. Const., art. 4, sec. 1, 1 R. S. 1876, p. 27. When, therefore, an act of the general assembly is passed, which violates no provision of the federal or state Constitution, the judicial department cannot hold it to be void on the ground that it is wrong, or unjust, or violates the spirit of our institutions." *Welling* v. *Merrill* (1876), 52 Ind. 350; *Horning* v. *Wendell* (1877), 57 Ind. 171; *Townsend* v. *State* (1896), 147 Ind. 624, 634, 47 N. E. 19, 37 L. R. A. 294, 62 Am. St. 477; *Forsythe* v. *City of Hammond* (1895), 68 Fed. 774, 777.

Counsel for the appellee neither in their briefs nor in oral argument quote language from any decision of this court showing what particular provision of the Constitution forbids the prohibition of the manufacture and sale of intoxicating liquor. The whole trend of the decisions in this state on the remonstrance laws, license laws and the local option laws shows that no such thing ever entered the mind of this court from the time of the Beebe case and the cases immediately following it to the present time. But on the contrary, this court has repeatedly said the subject of the control of intoxicating liquor is entirely within the power of the people through the legislature to do anything that they deem necessary, not only to prohibit the sale but in order to effectuate that purpose to even prohibit the manufacture of intoxicating liquor within the state. In *Welsh* v. *State*

(1890), 126 Ind. 71, 77, 25 N. E. 883, 885, 9 L. R. A. 664, this court said: "All laws regulating and imposing burdens on the business are prohibitory in their character. There is no difference between an absolute prohibitory law, a law providing for local option, and license law, except in the extent to which they prohibit the manufacture and sale of intoxicating drinks. An absolute prohibitory law deprives all within its reach from engaging in the business; a local option law prohibits all within a given locality from selling within that locality; while a license law prohibits all within the State, who have not obtained a license, from engaging in the business of retailing intoxicating liquors. Each of these is a restriction upon the common law right of the individual citizen." In the case of *State* v. *Gerhardt*, *supra*, 469, this court used the following language: "'Acting upon the just assumption that the unrestricted sale of intoxicating liquors results in much evil, and that it is detrimental to society, the law-making power of each State in the Union has, in the exercise of its police power, assumed to control, regulate or prohibit the business, as seemed to it best'." And in the same case, at page 468, the court says: "All laws which regulate, or restrict, the sale of such liquors, by imposing burdens or conditions upon the business, are in their nature or character to an extent at least, prohibitory." And in the case of *Sopher* v. *State* (1907), 169 Ind. 177, 194, 81 N. E. 913, 919, 14 L. R. A. (N. S.) 172, 14 Ann. Cas. 27, this court said: "The right to pursue such vocation was not of such an inherent or inalienable nature as to place the business beyond the control of the legislative department. The latter might, in the exercise of its discretion, under the police power, in the interest of society and the public in general, either suppress or prohibit the traffic entirely, or permit it to exist under such necessary restric-

tions, regulations and burdens as might be deemed proper to impose in order to mitigate or minimize the evils resulting from the traffic, and as against the validity of such laws enacted by the legislature, the liquor dealer was not in a position to assert any inherent or inalienable right to the contrary." See, also, to the same effect, *Schmidt* v. *City of Indianapolis* (1907), 168 Ind. 631, 638, 80 N. E. 632, 14 L. R. A. (N. S.) 787, 120 Am. St. 385; *Jordan* v. *City of Evansville* (1904), 163 Ind. 512, 517, 72 N. E. 544, 67 L. R. A. 613, 2 Ann. Cas. 96; *City of Greencastle* v. *Thompson* (1907), 168 Ind. 493, 501, 81 N. E. 497; *City of Delphi* v. *Hamling* (1909), 172 Ind. 645, 651, 89 N. E. 308.

It is also contended by the appellee that there must be a limitation in the Constitution against complete prohibition of the manufacture and sale of intoxicating liquor because it was proposed in the constitutional convention and rejected. This question has been brought to the attention of this court before and the history of that subject reviewed. The committee to which this question was referred in December, 1850, reported to the convention as follows: "The committee of the legislative department, to whom was referred some sundry petitions and resolutions on the subject of the sale of ardent spirits, have had that subject under consideration and have appeared here to report that your committee deem it inexpedient to make any constitutional provision on this subject as it more particularly belongs to the legislature. They therefore ask to be discharged." And this court after reviewing this history, in the case of *Sopher* v. *State, supra,* 192, says: "By these deliberative acts of the convention which formed and moulded our present Constitution that body appears to have left the question in regard to the traffic in intoxicating liquors in the hands of the leg-

islative department, where the convention found it at the time it convened."

The power of the states, under their constitutions and under the federal Constitution, to prohibit the manufacture and sale of intoxicating liquor and to provide such means for the enforcement of prohibition as seems expedient to the legislature, is now

8.

so well settled that it is no longer an open question. *In re Crane* (1915), 27 Idaho 671, 151 Pac. 1006, L. R. A. 1918A 942; *Crane* v. *Campbell* (1917), 245 U. S. 304, 38 Sup. Ct. 98, 62 L. Ed. 304 (see authorities there cited); *State* v. *Fabbri* (1917), 98 Wash. 207, 167 Pac. 133, L. R. A. 1918A 416; *State* v. *Hemrich* (1916), 93 Wash. 439, 161 Pac. 79, L. R. A. 1917B 962; *State* v. *Davis* (1915), 77 W. Va. 271, 87 S. E. 262, L. R. A. 1917C 639; *Delaney* v. *Plunkett* (1916), 146 Ga. 547, 91 S. E. 561, L. R. A. 1917D 926, Ann. Cas. 1917E 685; *State, ex rel.* v. *Delaye* (1915), 193 Ala. 500, 68 South. 993, L. R. A. 1915E 640; *Cureton* v. *State* (1910), 135 Ga. 660, 70 S. E. 332, 49 L. R. A. (N. S.) 182; *State* v. *Fargo Bottling Works Co.* (1910), 19 N. D. 396, 124 N. W. 387, 26 L. R. A. (N. S.) 872; *Motlow* v. *State* (1911), 125 Tenn. 547, 145 S. W. 177, L. R. A. 1916F 177; *State* v. *Railroad* (1915), 169 N. C. 295, 84 S. E. 283; *Seaboard Air Line Ry.* v. *North Carolina* (1917), 245 U. S. 298, 38 Sup. Ct. 96, 62 L. Ed. 299; *State* v. *Lowell* (1874), 47 Vt. 493; *State* v. *Durein* (1904), 70 Kan. 1, 78 Pac. 152, 15 L. R. A. (N. S.) 908, and note; *Mugler* v. *Kansas* (1887), 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; *Bartemeyer* v. *Iowa* (1873), 18 Wall. 129, 21 L. Ed. 929; *Crowley* v. *Christensen* (1890), 137 U. S. 86, 11 Sup. Ct. 13, 34 L. Ed. 620; *Giozza* v. *Tiernan* (1892), 148 U. S. 657, 13 Sup. Ct. 721, 37 L. Ed. 599; *Clark Distilling Co.* v. *Western, etc., R. Co., supra.*

In the light of these authorities and the decisions of

this court which we have heretofore set out, we hold that this act violates no provision of the state or federal Constitutions by prohibiting the manufacture and sale of intoxicating liquor.

It is also contended that the title is insufficient and that the act is not consistent with the title. The title is as follows: "An act prohibiting the manufacture, sale, gift, advertisement or transportation of intoxicating liquor except for certain purposes and under certain conditions."

The provision of our Constitution is that every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title. This provision is to prevent tricking the legislature into passing acts foreign to the one under consideration by it. *Hingle* v. *State* (1865), 24 Ind. 29. It will be seen by the authorities which we have heretofore set out that to prohibit the traffic the legislature may define as an intoxicant that which is far from intoxicating, in order to prevent the manufacture and sale of that which is intoxicating; that it may prevent the possession of liquor; that it may provide that the place where liquor is kept or manufactured may be declared a nuisance and closed; that it may designate those who are to handle and dispense liquor and upon what terms; that it may forbid advertisements of liquor; that it may provide what shall make a *prima facie* case of violation of the law. All of these provisions are properly connected with the purpose of the legislature to prevent the traffic in intoxicating liquor as a beverage and are therefore within the title of the act.

It is next insisted that the act is void because it gives the right to registered pharmacists to deal in intoxicants under certain restrictions, and because those who have liquors manufactured in the state which are in bond

may have possession and pay tax and dispose of such liquors outside of the state, and all others must get rid of the intoxicants which they have on hand within ten days of the time that the law goes into effect.

The "privileges and immunities" section of our Constitution, the "class" section, and the "general law" section are not violated if an act is reasonably designed to protect the health, morals or welfare of the public. *State* v. *Wiggam* (1918), *ante* 159, 118 N. E. 684. The legislature must classify in nearly every act which it passes to protect society. To hold that it may not, would be to overthrow nearly all of the laws that are made for the public welfare. If the legislature thought that this law could be better enforced by compelling all persons to remove liquors from the state except those having liquors manufactured in the state and in bond, it had a perfect right to do so. It is not for this court to try to excel legislative wisdom on the question of expediency.

The act is valid as to all its provisions brought in question. The court erred in overruling appellant's demurrer to appellee's complaint.

The judgment is reversed, with instructions to the trial court to sustain the demurrer to the complaint.

Myers, C. J., concurs in conclusion. Spencer, J., dissents.

## DISSENTING OPINION.

SPENCER, J.—I am unable to agree with the majority of my associates that the manufacture of intoxicating liquors within the State of Indiana may lawfully be prohibited under the Constitution of the state and, in view of the importance of the question at issue, I feel impelled to state the grounds of my dissent.

As is suggested by the majority opinion, this action was instituted by appellee to restrain appellant from

enforcing the so-called Prohibition Law of 1917 (Acts 1917 p. 15) on the ground that said law is unconstitutional and void. Various reasons for the position taken by appellee are set out in its complaint but those to which I direct especial attention are contained in the following allegations:

"Plaintiff further says that on the —— day of March, 1894, it was duly granted a corporate charter by the State of Indiana, upon a consideration paid by the plaintiff to the State, by which said charter this plaintiff was duly authorized to do the business therein specified, in the State of Indiana and elsewhere, for a period of fifty years from and after said date as a corporation, with all the authority and powers conferred by law on corporations; that under and pursuant to the provisions of said charter this plaintiff was authorized to and did engage, and is now engaged in Vanderburgh County, Indiana, exclusively in the business of the manufacture of beer, ale and other liquor and the sale thereof in barrels, kegs, bottles and other packages throughout the United States of America and elsewhere; that immediately after said incorporation aforesaid, this plaintiff purchased real estate in said Vanderburgh County and improved the same by erecting thereon large and expensive buildings and installed therein machinery at an expense of several hundred thousand dollars for the sole purpose for which this plaintiff was incorporated as aforesaid, and since said date continuously to the present time has been and now is using said property exclusively for the purposes aforesaid.

"And plaintiff further says that at the time said charter was granted as aforesaid and continuously thereafter to the present time the laws of the State of Indiana, as enacted and declared by the General Assembly of the State and by the Supreme Judicial Tribunals of the State, have made and do now make the business of the

manufacture and sale of intoxicating liquor a lawful business, and have extended to property used in the manufacture and sale of such liquor the same protection extended to other property and did then recognize and since said time continuously have recognized and protected the owner or owners of such property in the same manner as the owners of other property; and plaintiff further says that at the time of said granting of said charter as aforesaid and continuously thereafter to the present time, it has relied and acted upon the validity of said laws enacted and promulgated and in full force and effect as aforesaid, and relying upon said laws as in force has, during said time since its incorporation to the present time, invested in said city aforesaid more than one million dollars in real estate, machinery and improvements thereon; that said machinery and improvements were made and acquired and are suitable only for the purpose for which the same were made and acquired as aforesaid and for the sole and exclusive purpose of the manufacture and sale of intoxicating liquors, under and pursuant to the charter granted to this plaintiff as aforesaid, and that said real estate so acquired and the improvements and machinery so placed thereon are now and during said time have been owned by this plaintiff and are now of the value of more than one million dollars; that said improvements and machinery aforesaid, are suitable only for the purpose of the manufacture of intoxicating liquors and cannot be used, and are worthless, for any other purpose whatsoever; that relying upon said laws as aforesaid and upon the said charter so granted to this plaintiff as aforesaid, this plaintiff purchased and improved said property as aforesaid and that if this plaintiff is deprived of the use of said property for the uses and purposes aforesaid said property will be worthless and will be a total loss to this plaintiff. * * *

"And plaintiff further says that at the time said charter aforesaid was granted by the State and was accepted by this plaintiff, the laws of the State as aforesaid entered into and became a part of said charter, and that said charter, when so granted and accepted, became and was and is a valid contract between this plaintiff and the State of Indiana, and plaintiff says that said defendant should be enjoined from enforcing the provisions of said act of February 9, 1917, against this plaintiff, for the reason that said act is in violation of Section ten (10) of Article one (1) of the Constitution of the United States prohibiting a State from enacting a law impairing the obligation of contracts.

"And plaintiff further says that said act of February 9, 1917, is unconstitutional and void and should not be enforced against this plaintiff for the reason that the Constitution of this State has not conferred upon the General Assembly of this State authority to prohibit arbitrarily the use by any citizen of the State of any property which such citizen may lawfully acquire, nor has the Legislature of this State been given any authority by the Constitution of this State to prohibit arbitrarily a citizen of Indiana from using property he may lawfully acquire in such manner and for such purpose as such citizen may deem best or most advantageous to himself, nor has the Constitution of this State conferred any authority, either expressly or impliedly, upon the General Assembly of this State, to prohibit the manufacture and sale of any particular class or classes of personal property.   *   *   *

"Plaintiff further says that said act of February 9, 1917, should not be enforced against this plaintiff, and that the defendant should be enjoined and restrained from enforcing said act against this plaintiff for the reason that if this plaintiff is prohibited from using its said property and buildings and machinery aforesaid for the

purpose for which the same was constructed and acquired as aforesaid, that the same will become of no value as property, and will become materially diminished in value if not employed in the manufacture of malt liquor for every purpose, and that the enforcement of said act by said defendant as aforesaid will be a taking of the property of this plaintiff without due process of law, in violation of constitutional provisions of this State and of the United States."

Appellant's demurrer admitted the truth of all facts pleaded in appellee's complaint, and it became the duty of the trial court, and now of this court, to determine whether the pleader's conclusions as to the law are equally well founded. In approaching this question I am not unmindful of a growing public sentiment that the use of intoxicating liquors has been seriously abused and that traffic therein must be more strictly regulated. I recognize, also, that in a proper case, and as an aid to interpretation alone, public sentiment, when clearly defined, may be considered by the courts in determining what legislative intention is sought to be expressed in an enactment which is responsive to that sentiment. But this doctrine has no application where the sole issue to be decided is the right of the legislature, under the Constitution, to pass the act in question. As was once said by Rufus Choate, in speaking of the duty of a judge: "He shall know nothing about the parties, everything about the case. He shall do everything for justice, nothing for himself—nothing for his friends— nothing for his patron—nothing for his party. If on the one side is the executive power and the legislature and the people—the sources of his honors, the givers of his daily bread—and on the other, an individual nameless and odious, his eye is to see neither great nor small, attending only to the trepidations of the balance. If a law is passed by a unanimous legislature, clamored for

by the general voice of the public and a cause is before him on it, in which the whole community is on one side and an individual nameless and odious on the other, and he believes it to be against the Constitution, he must so declare it or there is no judge."

The case at bar presents squarely an issue of constitutional authority and the decision of that issue must rest on sound principles of constitutional law. In its ultimate analysis, the decision by the majority of the court that the legislature may lawfully prohibit the manufacture of intoxicating liquors is based on the theory that its act constitutes a proper exercise of the police power of the state. The definitions of "police power," as announced by various authors and jurists, contain some confusion and ambiguity but, in fact: "The police power of the government, as understood in the constitutional law of the United States, is simply the power of the government to establish provisions for the enforcement of the common as well as civil-law maxim, *sic utere tuo, ut alienum non laedas.* 'This police power of the State extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the State. According to the maxim, *sic utere tuo, ut alienum non laedas,* it being of universal application, it must of course be within the range of legislative action to define the mode and manner in which every one may so use his own as not to injure others.' Any law which goes beyond that principle, which undertakes to abolish rights, the exercise of which does not involve an infringement of the rights of others, or to limit the exercise of rights beyond what is necessary to provide for the public welfare and the general security, cannot be included in the police power of the government. It is a governmental usurpation, and violates the principles of abstract justice, as they have been developed under our republican institutions."

Tiedeman, Limitations of Police Power 4, §1. With this principle in mind, the above author concludes, after a careful and extended discussion of his subject, "that no trade can be subjected to police regulation of any kind, unless its prosecution involves some harm or injury to the public or third persons, and in any case the regulation cannot extend beyond the evil which is to be restrained. It has also been maintained, and I think satisfactorily established, that no trade can be prohibited altogether, unless the evil is inherent in the character of the trade, so that the trade, however conducted, and whatever may be the character of the person engaged in it, must necessarily produce injury upon the public or upon individual third persons." Tiedeman, *supra,* 301, §103. When one has assented to the truth of these principles, as he must, in their application to other cases of police regulation of employments, "his inability to adhere to them, in their application to the police regulation of the liquor trade, indicates either a lack of courage to maintain his convictions in the face of popular clamor, or an obscurity of his judgment through his sympathetic emotions, which are aroused in considering the gigantic evil to be combated." Tiedeman, Limitations of Police Power 302.

Tested in the light of the above principles, which must serve as the basis for every proper exercise of the police power, it is apparent beyond question that the act now under consideration is invalid, at least in so far as it attempts to prohibit the manufacture of intoxicating liquors within the state. It is not to be doubted that the excessive use of intoxicants by the individual has contributed greatly to the increase of poverty and crime among the people, but that fact constitutes no valid objection against the right to manufacture the commodity. Physicians and scientists are equally certain that the

excessive use of particular foods, especially animal flesh, is responsible to a great degree for the prevalence of physical suffering and disease (auto-intoxication), yet can the beef packer be prohibited from pursuing his trade on that account? The use and abuse of gasoline is daily exacting a heavy toll from the people of this country in motor accidents, yet no one will contend that the production of gasoline and similar substances may lawfully be prohibited. On what theory, then, is the manufacture of intoxicating liquors to be prohibited because their abuse by individuals tends to produce misery and want, when the same individual abuse of meat and gasoline may lead to equally distressing conditions without inducing lawful restraint on their manufacture? Obviously, the distinction is arbitrary and a legislative mandate against production ought no more to be sustained in the one case than in the other. "The police power rests upon necessity and the right of self-protection, but private property cannot be arbitrarily invaded under the mere guise of police regulation." C. J. Fuller in *Lawton* v. *Steele* (1894), 152 U. S. 133, 144, 14 Sup. Ct. 499, 503, 38 L. Ed. 385. Again, as was said by Mr. Justice Harlan, in *Mugler* v. *Kansas* (1887), 123 U. S. 623, 661, 8 Sup. Ct. 273, 31 L. Ed. 205, a case involving the constitutionality of the Kansas law enacted under a specific mandatory declaration in the Constitution of that state, which law was upheld: "The courts are not bound by mere forms, nor are they to be misled by mere pretences. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by

the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution." This court said, by Hadley, C. J., in *Republic Iron & Steel Co.* v. *State* (1902), 160 Ind. 379, at page 386, 66 N. E. 1005, 1007, 62 L. R. A. 136, in quoting the words of Brown, J., in *Lawton* v. *Steele, supra;* " 'The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts.' " And this court, speaking for itself, further said: "It follows that a statute to be within the power must be responsive to some public necessity, suitable to subserve it, and reasonable in its operation." Again, this court, in *State* v. *Richcreek* (1906), 167 Ind. 217, at page 230, 77 N. E. 1085, 5 L. R. A. (N. S.) 874, 119 Am. St. 491, 10 Ann. Cas. 899, uses this expression, in substance: The exercise of the police power is subject to the supervision of the courts and such acts may be declared void when they violate some constitutional right.

There is nothing in the *manufacture* of intoxicating liquors which leads directly to public harm and no evil which inheres in the character of that trade. Indeed, the beneficent uses of such liquors are recognized in the very act now under consideration and this recognition, in itself, serves to overcome the only ground on which the prohibition of their manufacture can be sustained, viz.: "That the trade, however conducted, and whatever may be the character of the person engaged in it, must necessarily produce injury upon the public or upon individual third persons." Section 5 of the act, *supra,* among others, recognizes the right of an individual to have and to use intoxicants in his own home and author-

izes a registered pharmacist to sell intoxicating liquors for medicinal and sacramental purposes, thereby declaring, in effect, that there is a proper use for such liquors. This declaration and admission is necessarily destructive of the assumed power to prohibit their manufacture, for the right to engage in a proper business is a natural right which is entitled to constitutional protection. The assured right of possession and use on the part of the citizen necessarily implies the existence of an adequate lawful means of obtaining it and a proper source of supply, yet the act prohibits all citizens of Indiana from engaging in the production of that supply. This constitutes a discrimination in favor of citizens of other states and is, in itself, sufficient to condemn the law. Furthermore, it appears from appellee's complaint, and appellant's demurrer admits the truth of the averment, that its business as a manufacturer of intoxicating liquors is not confined to the State of Indiana but extends "throughout the United States of America and elsewhere." On what possible theory can appellee be legally deprived of the right to manufacture its products in Indiana for shipment into territory where their sale is not prohibited? Certainly that business would have no reasonable relation to or effect on the health, morals or general welfare of the people of this state and its prohibition cannot be justified on any legal ground.

Many other objections against the validity of this act as a proper exercise of the police power may be suggested, but the points above made cannot, in reason, be successfully controverted. I know that numerous cases may be found which seem to recognize a power in the states to prohibit the manufacture and sale of intoxicating liquors as tending to promote the general welfare of the people, but on an examination of such cases, most of which are collected in the majority opinion, it will be found either that they rest on constitutional provi-

sions which differ from our own or that the holding of the court in the particular instance is as arbitrary and lacking in basic reason as is the law which it sustains.

In brief, I subscribe fully to the conclusion reached by Mr. Tiedeman, after a careful consideration of all the constitutional reasons for and against the prohibition of the liquor trade, that: "The prohibition of the manufacture and sale of spirituous and intoxicating liquors is unconstitutional, unless it is confined to the prohibition of drinking saloons, and the prohibition of the sale of liquor to minors, lunatics, confirmed drunkards, and persons in a state of intoxication. As has already been explained, there is an almost unbroken array of judicial opinions against this position, and there is not any reasonable likelihood that there will be any immediate revulsion in the opinions of the courts. But it is the duty of a constitutional jurist to press his views of constitutional law upon the attention of the legal world, even though they place him in opposition to the current of authority." Tiedeman, Limitations of Police Power 311, §103. Tested solely by established principles of constitutional law, the absolute prohibition of the manufacture of intoxicating liquors is not a proper exercise of the police power of the state and, on any other theory, legislation looking to that end must constitute a taking of private property without due process of law. 14th amendment, U. S. Constitution.

The above conclusions, to which reason and logic unerringly lead, are sufficient to require an affirmance of the decision in this case, but there is an additional ground on which the decision of the trial court ought to be upheld. The majority opinion, which is solely a "case law" opinion, refers briefly to the case of *Beebe* v. *State* (1855), 6 Ind. 501, 63 Am. Dec. 391, and the decisions subsequent thereto, and says: "It cannot be determined by those cases on what principle the court

was acting. The question stood undecided for three years and then the law was pronounced void without assigning any reasons as to whether it was considered void under the state Constitution or federal Constitution." I am unable to understand that statement. This court, in the Beebe case, by a vote of three to one, expressly held that the law of 1855, then under consideration, was void in so far as it undertook to *prohibit the manufacture* of intoxicating liquors within the state. Judge Perkins, with Judge Davison concurring, held that the act was to that extent violative of various sections of the Bill of Rights as set forth in the Constitution of Indiana and particularly the provision in §21 that "no man's property shall be taken by law without just compensation." Judge Stuart expressly agreed with the conclusion that it was unconstitutional to prohibit the manufacture of liquor, although not assigning his reasons therefor, while Judge Gookins alone dissented on that proposition. It is true, as was later stated by Judge Perkins, in the case of *Ingersoll* v. *State* (1858), 11 Ind. 464, that those sections of the act which sought to prohibit the retail of intoxicating liquors were not judicially annulled until nearly three years had elapsed from the time of its going into effect, but the decision that the legislature, *under the present Constitution of the state,* has no power to enact a law prohibiting the *manufacture* of intoxicating liquor was clearly defined and has stood unchallenged to the present time. That decision was necessarily binding on the trial court in this case as the latest expression of the supreme judicial tribunal of the state on the issues involved, and it should be equally controlling in this appeal for either of two reasons. In the first place, it is sound in principle and therefore to be followed without question, but, if conceded to be erroneous as an original holding, it must now serve as the basis for a just appli-

cation of the rule of *stare decisis*. The prevailing opinion holds that the latter rule "cannot be invoked to shut off police power" but, for reasons heretofore stated, I do not agree that its invocation in the present case would have that effect. Appellee's complaint alleges, and appellant's demurrer admits, that large sums of money have been invested and valuable property rights acquired on the strength of the charter contract granted by the state to appellee, and on the rule theretofore announced in the decisions of this court that the legislature could not take from appellee, without fault on its part, the right to do business under that charter. The decision in *Beebe* v. *State, supra,* at least to the extent that it holds the legislature to be without such power, has become a rule of property in Indiana, and the rights acquired by appellee on the faith of that rule must be protected under the doctrine of *stare decisis,* if on no other ground. *Moore-Mansfield, etc., Co.* v. *Indianapolis, etc., R. Co.* (1912), 179 Ind. 356, 391, 101 N. E. 296, 44 L. R. A. (N. S.) 816, Ann. Cas. 1915D 917; *Pond* v. *Irwin* (1888), 113 Ind. 243, 247, 15 N. E. 272; *Frank* v. *Evansville, etc., R. Co.* (1887), 111 Ind. 132, 136, 12 N. E. 105; *Diamond Plate Glass Co.* v. *Knote* (1905), 38 Ind. App. 20, 25, 77 N. E. 954.

The decision of the Vanderburgh Superior Court should be affirmed.

NOTE.—Reported in 120 N. E. 19, 23. Intoxicating liquors: general power of state to regulate and prohibit traffic, 2 Ann. Cas. 98, 23 Cyc 77, 12 C. J. 1164. Limitations on the doctrine of *stare decisis,* 73 Am. St. 98, 15 C. J. 947. Validity of liquor law under constitutional provision as to title and subject-matter of statutes, 20 Ann. Cas. 323. See under (2) 12 C. J. 887; (8) 23 Cyc 65.