### ROBERTS v. THE STATE.

[No. 3,510.    Filed October 11, 1900.]

GAMING.—*Visiting Gambling House.—Statute Construed.*—A single visit to a gambling house is a misdemeanor within the meaning of §2089 Burns 1894.  *p. 367.*

SAME.—*Circumstantial Evidence.*—A finding that a particular room was a "gambling house," within the meaning of §2089 Burns 1894, will not be disturbed on appeal, where circumstances were shown from which the trial court could reasonably and legitimately infer such fact.  *pp. 372, 373.*

SAME.—*Affidavit and Information.—Judgment.— Variance.*—Where an affidavit and information charges defendant with visiting a gambling house, a finding and judgment that "the defendant is guilty of frequenting a gambling house as charged" is sufficient, since the words "of frequenting a gambling house" are surplusage.  *pp. 374, 375.*

From the Monroe Circuit Court.    *Affirmed.*

*J. R. East, R. H. East* and *J. E. Kelley,* for appellant.

*W. L. Taylor,* Attorney-General, *Merrill Moores* and *C. C. Hadley,* for State.

WILEY, J.—Appellant was prosecuted and convicted for visiting a gambling house, and his motion for a new trial was overruled. He has assigned errors (1) that the court erred in overruling his motion to quash the affidavit and information; (2) that the court erred in overruling his motion for a new trial. We will discuss and decide these questions in the order named.

The affidavit and information rest upon §2089 Burns 1894, §2002 Horner 1897. That section defines several offenses, but when applied to the offense charged against appellant is as follows: "Whoever, being a male person, * * * frequents or visits a gambling house or houses, * * * shall be fined," etc.

The charging part of the affidavit is that the appellant "on the 31st day of May, A. D. 1899, at and in the county of Monroe and State of Indiana, being a male person, did unlawfully visit for the purpose of gaming a certain place where gambling was permitted, to wit, a certain room, then and there occupied by one Walter Neeld, situate," etc. The information is substantially in the same language.

A change of venue being taken from the regular judge, Hon. G. L. Reinhard was appointed special judge to try the case.

The objection urged to the affidavit and information is that they only charge appellant with having made a single visit to a gambling house, and that a single visit is not an offense within the meaning of the statute. Counsel for appellant say that since the statute was amended in 1889, it has not been construed by a court of last resort. A brief review of the history of legislation upon the subject-matter of the statute, and the decisions of the court thereunder, may materially aid in its construction and in arriving at the intention of the legislature in enacting it.

We do not deem it necessary to go back in legislative history farther than the revision of 1881. At that time, the language of the statute was: "Whoever being a male person, * * * frequents gambling houses," etc. §2002 R. S. 1881. The word "visit" or "visits" did not occur in the statute. At that time there was also a statute defining a "common gambler", and that statute was as follows: "Whoever, for the purpose of gaming with cards or otherwise, travels about from place to place, or frequents any place where gambling is permitted, or engages in gambling

for a livelihood, is a common gambler," etc.   §2085 R. S. 1881.

In the case of *Green* v. *State*, 109 Ind. 175, appellant was indicted for frequenting a gambling house, and on trial was convicted.   The evidence showed that at the time charged appellant was seen at the room designated engaged in a game where money was wagered, but there was no evidence to show that he had ever been there at any other time.   Upon this evidence the Supreme Court reversed the judgment on the ground that proof of one visit to a gambling house was not sufficient to sustain an indictment for frequenting a place where gambling was permitted.   The court by Niblack, J., said: "Proof of an occasional visit to a house in which gambling is permitted is not sufficient to sustain a conviction in a case like the one before us.   To make the frequenting of such a house a misdemeanor, it must be something akin to, or in the nature of, a habit." This decision was rendered January 12, 1887.   In 1889 the legislature amended section 2002, *supra*, and that section as it now is reads as follows: "Whoever, being a male person, frequents or visits a house or houses of ill-fame or of assignation;   *   *   *   or frequents or visits a gambling house or houses;   *   *   *   shall be fined," etc.   Counsel for appellant argue that the word "visits", as used in the statute, is plural, and as only one visit is charged against the appellant, the affidavit and information do not charge an offense as defined by the statute.   We think this argument is fallacious.   The word "visits," as it is used in the statute, is a verb, and as used is singular, and not plural.   It would have been an unpardonable grammatical error for the legislature to have used the word "visit" where the word "visits" occurs.   We have no doubt but what the legislature, in the exercise of its police powers, could make it an offense for a person to make a single visit to a gambling house or houses, and this is just what it intended to do in the amended section of the statute under which this prosecu-

tion is waged. And we do not know how such intention could have been more distinctly or clearly expressed. It will be observed that the same language is used relating to visiting a house or houses of ill-fame, as that employed in defining an offense for frequenting or visiting a gambling house. Counsel for appellant certainly would not contend that before a person could be convicted of visiting a house of ill-fame he would have to be charged with frequently visiting it, and the proof made to harmonize with the charge. It was the intention of the legislature to guard the morals of the citizens so far as it was possible, and to forbid any one from visiting such places of iniquity. The mere statement of the fact of a single visit by a male person to a house of ill-fame is its own argument in support of the proposition that a charge of such visit and proof thereof would sustain a conviction under the express language of the statute. It is to be remembered that we are not discussing what would constitute "frequenting" such places. There is a wide difference between the words "frequenting" and "visits," as used in the statute. The former means to visit often; to resort to often or habitually, etc. Webster's Dict. It was this very meaning of the word "frequents", and the construction put upon it by the courts, that prompted the legislature to amend the statute in 1889, so that the intention of the legislature might become manifest, and the violation of its prohibition be properly punished. We think there can be no doubt about this proposition, that a single visit to a gambling house is a misdemeanor within the meaning of the statute, a violation of its provisions, and hence must hold that the offense is sufficiently charged in the affidavit and information. The motion to quash was properly overruled.

Appellant's motion for a new trial was based upon the following grounds: (1) Insufficiency of the evidence; (2) no evidence to sustain the finding; (3) the finding is con-

trary to law; (4) the finding is contrary to the law and the evidence. It is earnestly urged that there is no evidence to support the finding and judgment.

The evidence shows that on the day charged in the indictment two police officers went to the room rented and occupied by one Walter Neeld. This visit of the officers was made between 1 and 2 o'clock in the morning. They found there the defendant and six other men. These officers testified that two of the occupants were playing cards; that one of the parties playing had $1.50 in money in front of him; that both parties playing had poker chips in front of them; that there were poker chips in the middle of the table; that the appellant was sitting at the table where the playing was going on; that the table was round with a cloth top; that there was a drawer in the table; that said Neeld, the occupant of the room, was sitting at the table by the drawer and dropped in a check or two once in a while, which he took from the center of the table. The evidence further shows that the room in question was immediately over a saloon kept by one Strothers, who was one of the parties playing cards; that no one lived over the saloon, and that all the furniture in the room was a poker table, a few chairs and a sofa. The appellant admitted that he was at the room the night in question, and testified that it was the only time he was ever there; that he was invited there on that night by Neeld, the occupant, to have some lunch; that some lunch was brought; that he ate a part of it; that he did not see any one gambling; that he did not know the room was a place where gambling was permitted; that he did not see any money on the table. Neeld testified that on the night in question he invited the appellant and others up to his room to have some lunch; that he rented the room for an office, and used it for the purpose of an architect's or contractor's office; that he found there a table, some chairs, some poker chips, and a few other articles; that he went out and got some lunch; that two of the party, Strothers

Roberts *v.* State.

and Nicholson, engaged in a game of seven-up; that he counted the points made, with the poker chips; that there was $1.50 on the table which belonged to Nicholson, being the change out of a $2 bill after buying the lunch; that none of the money was bet on the result of the game; that the checks represented nothing of value; that he did not receive any percentage or commission from the game; that the room was not kept by him for the purpose of allowing persons to gamble there, and that there was no gambling there while he had control of it. Other witnesses who were in the room at the time testified on behalf of appellant, and on all material facts their evidence was in line with that of Neeld. It is upon this evidence that appellant asks a reversal.

Under the rule, which has never varied in this State, we can not reverse a case on the evidence, if there is any evidence to support the finding and judgment. Our first inquiry is, therefore, is there any evidence in the record to support the judgment of the trial court. Two substantive facts had to be proved to warrant a conviction: (1) That appellant visited the place charged, and (2) that such place was a gambling house. We may dismiss the first inquiry by saying that it was shown by direct evidence and the admission of the appellant that he was at the place charged and at the time charged. As to the second inquiry, it may be remarked that there is no direct evidence in the record to show that such place was a gambling house, or a place where gambling was permitted, and hence, if it was necessary to establish the fact by direct and positive evidence, the State has wholly failed. But such is not the law. It often occurs in prosecutions for the violation of criminal statutes that it is utterly impossible to establish the defendant's guilt by direct and positive evidence, and if the State did not have resort to other means of proof the guilty would go unpunished. In prosecutions for crime, it is often necessary to establish guilt by circumstantial evidence. The word "evidence", as used in judicial language, signifies all the

means by which the existence or non-existence of disputed facts is established. Greenleaf on Ev., (15th ed.) §1. Circumstantial evidence is one of the means of establishing a fact in dispute. So that if the record in this case established the fact that appellant visited a gambling house, it must be admitted that it was established by such evidence.

In the early judicial history of this State, Judge Blackford declared the law to be that it is a question for the jury, under the evidence before them, to decide whether or not a particular room was used for gambling, and that they might so find from circumstances indicating that gambling was going on in the room. *Armstrong* v. *State*, 4 Blackf. 247. The same rule was adhered to in the case of *State* v. *Miller*, 5 Blackf. 502, and in *McAlpin* v. *State*, 3 Ind. 567. If circumstantial evidence in such cases satisfies the jury beyond a reasonable doubt that the place charged is a gambling house, it is sufficient. 14 Am. & Eng. Ency. of Law, (2nd ed.) 526; *State* v. *Worth*, R. M. Charlt. (Ga.) 5; *State* v. *Oswald*, 59 Kan. 508, 53 Pac. 525; *Cox* v. *State*, 95 Ga. 502, 20 S. E. 269.

In the last case cited, it was held that a house alleged to have been kept as a gambling house must be clearly established by the evidence, but that its character may be inferred from circumstantial evidence. See, also, *Pacetti* v. *State*, 82 Ga. 297, 7 S. E. 867; *Robbins* v. *People*, 95 Ill. 175; *Stevens* v. *People*, 67 Ill. 587; *State* v. *Boyer*, 79 Iowa 330, 44 N. W. 558; *Harper* v. *Commonwealth*, 93 Ky. 200, 19 S. W. 737; *State* v. *Grimes*, 74 Minn. 257, 77 N. W. 4.

In the case before us, the trial judge exercised the functions of a jury. He heard and weighed the evidence, and was convinced beyond a reasonable doubt of appellant's guilt. Under the rule so well established by the authorities we have cited, which hold that the pivotal fact which we are now considering may be inferred from circumstances, we can not reach the conclusion that there was no evidence to war-

rant a conviction. There were many circumstantial facts from which the court could properly infer that the room in question was a place for gambling. In that room were six or seven men sitting about a round table with a cloth cover, and they were found there at about 1:30 o'clock Sunday morning. There were cards, money, and poker chips on the table. At least two of the parties were playing cards, and both of the parties playing had poker chips in front of them, and one of them had money on the table in front of him. There were also poker chips near or in the center of the table from which the person who occupied the room occasionally took a chip and dropped it in a drawer of the table. We think these are facts from which the court could draw the reasonable and legitimate inference that the room was a gambling house, within the meaning of the statute.

The evidence on the part of the appellant does not appeal to the mind and conscience of the court with sufficient force to override the inference to be drawn from the above stated facts, but carries with it an air of suspicion that casts upon it grave doubt and unbelief. This is doubtless the way it impressed the trial judge. It is unreasonable to believe that the parties who were found in that room and who were invited there, as the evidence tends to show, by Neeld, to partake of a lunch, would remain there until the late hour named for that sole purpose. Another fact which casts suspicion upon the statements of appellant is that though Neeld invited the party to a lunch at his own room, the lunch was actually purchased with money of one of the guests, and that the money that was seen on the table was $1.50, which was left out of a $2 bill after purchasing the lunch. So we conclude that under all the facts, if the room occupied by Neeld, where he was surrounded by his guests, was not a place for gambling, then in the language of the court in *Waugh* v. *Waugh*, 47 Ind. 580, 584, we say: "Human nature is inconstant, and inductive reasoning utterly fallacious." We can not therefore disturb the finding and judgment on the evidence.

This leaves but one question for decision. The finding of the court is as follows: "The court being sufficiently advised in the premises, finds the defendant guilty of frequenting a gambling house as charged." The judgment follows the language of the finding. Counsel argue that appellant was found guilty of a crime other than that charged. Concede this to be true, the error of the court, if it be error, is harmless. The punishment fixed by statute is the same for frequenting as it is for visiting a gambling house. There is no difference in the grade of the offense, or the punishment provided by law. It follows, therefore, that the error in the finding and judgment is harmless, and the rule is ancient, that a judgment will not be reversed for harmless error. But the exact question in principle has been decided adversely to appellant.

In *Evans* v. *State,* 150 Ind. 651, appellant was charged with petit larceny. Upon the trial, the court instructed the jury if they found from the evidence that appellant was being tried for a second offense, having before been convicted of petit larceny, they would be authorized to find him guilty of grand larceny. It was held that, where the statute prescribed a greater punishment upon a second or subsequent conviction for an offense, the former conviction must be alleged and proved at the trial, or the same could only be punished as a first offense. In passing upon the question that the jury found him guilty of "grand larceny as charged," the court, by Monks, J., said: "The verdict in this case found appellant 'guilty of grand larceny as charged in the information', but the verdict must be construed in connection with the information, as he was only found guilty of the offense charged therein, which was petit larceny. The verdict, therefore, only found the appellant guilty of petit larceny, and the error of the court, if any, committed in instructing the jury as to their being authorized to find appellant guilty of grand larceny, was harmless. As the verdict only found the defendant guilty of petit larceny,

which was charged in the information, and as the evidence is not in the record, the same can not be said to be contrary to law."

In the case before us, appellant was charged with visiting a gambling house. Under the information and proof, he could not have been found guilty of any other offense. We may properly regard the words in the finding and judgment "of frequenting a gaming house" as surplusage, and yet the finding and judgment would be sufficient. He was found guilty "as charged," and having been charged with visiting a gambling house, we must hold that the finding and judgment are sufficient. Judgment affirmed.