## STATE *v.* GRIFFIN.

[No. 28,391. Filed May 27, 1948.]

280

*Thos. H. Shrout,* Prosecuting Attorney, of Bedford; *Cleon H. Foust,* Attorney General; *Frank E. Coughlin,* First Deputy Attorney General, and *Harold V. Whitelock,* Deputy Attorney General, for the State.

*Mellen & Mellen,* of Bedford, for appellee.

GILKISON, J.—In the above entitled case the appellee was charged in the Lawrence Circuit Court by affidavit which, omitting caption, signature and verification is as follows:

"Lester W. Hayes, being duly sworn, on oath, on information, and belief, says that at and in the county of Lawrence and State of Indiana, on the 2nd day of August, 1947, one Bert Griffin, late of said County, being a male person, did then and there visit a gambling house, then and there being contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Indiana."

Appellee filed a motion to quash this affidavit, which motion, omitting caption and signature is as follows:

"The defendant, Bert Griffin, moves the court to quash the affidavit herein on each of the following grounds: 1. The facts stated in said affidavit

do not constitute a public offense. 2. Said affidavit does not state the offense charged with sufficient certainty."

The motion to quash was sustained by the court, and the state declining to plead further, judgment was rendered discharging the defendant, from which judgment this appeal is taken.

The statute defining the offense upon which the affidavit is based and fixing the penalty, is as follows:

"Whoever, being a male person, frequents or visits a house or houses of ill fame or of assignation, except as a physician to treat a patient or patients, or associates with women known or reputed as prostitutes, or frequents or visits a gambling house or houses, or is engaged in or about a house of prostitution, shall, on conviction, be fined not less than ten dollars nor more than one hundred dollars, and shall be imprisoned in the county jail not less than ten days nor more than sixty days."

Burns' 1942 Repl. § 10-4219, Acts 1905, § 470, ch. 169 p. 693.

Appellee's motion to quash is based wholly upon cause 1, that the facts stated in the affidavit do not constitute a public offense. Cause 2 that the affidavit does not state the facts with sufficient certainty, is dependent wholly upon cause 1.

The affidavit is fully within the statute aforequoted and if the statute is not unconstitutional the affidavit is good. It is appellee's contention that the statute is unconstitutional and void, for the following reasons:

(1) That it violates the following provisions of the Indiana Constitution, to wit: (a) § 19, Art. 4; (b) § 23, Art. 1; (c) § 22, Art. 4; (d) § 23, Art. 4.

(2) That it violates § 1 of the Fourteenth Amendment of the Constitution of the United States.

We shall consider these objections in the order named, and in so doing we are bound by the rule that a statute must be reasonably and fairly interpreted so as to give it efficient operation, and to give effect if possible to the expressed intent of the legislature. It should not be wantonly narrowed, limited or emasculated and rendered ineffective, absurd or nugatory. If possible it should be allowed to perform its intended mission as shown by the existing evils intended to be remedied. *Balzer* v. *Waring* (1911), 176 Ind. 585, 590, 95 N. E. 257, 48 L.R.A. (N.S.) 834; *Walters* v. *Bank of America* (1937), 9 Cal. 2d 46, 52, 69 P. 2d 839, 110 A.L.R. 1259, 1264; *DeTarr* v. *State* (1906), 37 Ind. App. 323, 327, 76 N.E. 897; *Perry Twp.* v. *Indianapolis Power & Light Co.* (1946), 224 Ind. 59, 69, 64 N.E. 2d 296; *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 617, 62 N.E. 492; *Smith* v. *Indianapolis St. R. Co.* (1902), 158 Ind. 425, 427, 63 N.E. 849.

1(a). Section 19 of Article 4 of the Indiana Constitution provides as follows: "Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

It has been repeatedly held by this court that this section aims only at titles narrower than the enactment. The unnecessary breadth of the title ordinarily is no objection to it. "The generality of a title is no objection to it so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection." If the title

covers a general subject it need not go further and mention all matters that are germane to the subject nor mention details. *Crabbs* v. *State* (1923), 193 Ind. 248, 254, 255, 139 N.E. 180. The title to this act is: "An Act concerning public offenses"—a very general title. The purpose of the title of an act is to give fair notice of its contents so as not to mislead those to be bound by its provisions. "The criterion is this: If the title fairly gives such notice so as to reasonably lead to an inquiry into the body of the bill, it is all that is necessary." *The State* v. *Arnold* (1894), 140 Ind. 628, 632, 38 N.E. 820; *Board Etc.* v. *Scanlan* (1912), 178 Ind. 142, 145, 146, 147, 98 N.E. 801; *Draper* v. *Zebec* (1941), 219 Ind. 362, 379, 380, 37 N.E. 2d 952, 38 N.E. 2d 995. *State ex rel. Taylor* v. *Greene Circuit Court* (1945), 223 Ind. 562, 63 N.E. 2d 287. The title of this act meets all the tests and is a sufficient title for each of the offenses defined in § 470 ch. 169 p. 693 Acts 1905, § 10-4219 Burns' 1942 Repl. It does not violate § 19, Art. 4 of the Indiana Constitution.

1(b). § 23, Art. 1 of the Indiana Constitution provides as follows: "The General Assembly shall not grant to any citizen, or class of citizens, privileges, or immunities which, upon the same terms, shall not equally belong to all citizens."

It will be noted that the section of the statute questioned does not directly grant any privilege or immunity to any one. It merely provides that male persons who commit certain acts shall be punished. The corollary naturally follows that in that section of the statute, at least, no punishment is provided for females committing the same offenses. However, § 471 of the same act, § 10-4220 Burns' 1942 Repl. provides as follows: "Any female who frequents or lives in a house or houses of ill fame, or asso-

ciates with women of bad character for chastity, either in public or at a house which men of bad character frequent or visit, or who commits adultery or fornication for hire, shall be deemed a prostitute and on conviction shall be fined not less than five dollars [$5] nor more than fifty dollars [$50], to which may be added imprisonment in the county jail not less than ten [10] days nor more than thirty [30] days." Thus it appears that the act not only provides punishment for males but also punishes corresponding offenses that females may commit, with possibly one exception—frequenting or visiting a gambling house or houses. Frequenting a house of ill fame is fully defined in each section. What then, is a house of ill fame? Bouvier's Law Dictionary Baldwin's Edition 1934, defines "ill fame" thus: "A technical expression, which not only means bad character as generally understood, but applies to every person whatever may be his conduct and character in life, who visits bawdy houses, gaming houses and other places which are of ill fame." Black's Law Dictionary 3rd Ed. p. 916, defines "ill fame" thus: "Evil repute; notoriously bad character. Houses of prostitution, gaming houses and other such disorderly places are called 'houses of ill fame,' and a person who frequents them is a person of ill fame." Thus by these authorities it is not improper to classify a gambling house as a "house of ill fame" and this thought might have been in the mind of the legislature, when it enacted the questioned statute in 1889. At any rate the offense charged reasonably comes under the subtitle "Offenses Against Chastity and Morality," and the section title "Houses of Ill Fame—Associating," whether it was necessary that it do so or not—a matter we are not required to decide.

In the matter of the classification of objects for the purpose of legislation, the rules have been well stated thus:

"... . It is, of course, competent for the legislature to classify objects of legislation. It has a large discretion in this regard, and if the classification is reasonable, not artificial or arbitrary, and rests upon some substantial difference of situation or circumstances indicating the necessity or propriety of legislation restricted to the class created, it will be upheld. It must have regard to the character of the legislation and the distinctions must bear a proper relation to the classification. ... However, if these fundamental requirements are present, it has been said that classification need not be scientific, consistent, logical or exact. It is not necessary that the reason for the classification should appear on the face of the legislation. In determining the propriety of the classification the court may resort to facts that are within its judicial knowledge, contemporaneous conditions and situations of peoples, existing state policies, and matters of common knowledge." 59 C.J., Statutes, § 319 pp. 732, 733.

See also *Fountain Park Co.* v. *Hensler* (1927), 199 Ind. 95, 101, 155 N. E. 465; *Sarlls, City Clerk* v. *State ex rel.* (1929), 201 Ind. 88, 104, 166 N. E. 270; *Long* v. *State* (1910), 175 Ind. 17, 92 N. E. 653.

Following this rule, the Supreme Court of Kansas in *In re Dunkerton* (1919), 104 Kansas 481 on page 484, reasoned thus:

"... . The legislature may very properly determine that women convicted of crime shall be less severely punished than men convicted of the same crime. The number of women that commit crimes is much smaller than the number of men committing similar crimes and that fact may be taken into consideration by the legislature and punishment may be prescribed which recognizes that difference."

See also *Ex Parte Gosselin* (1945), 141 Me. 412, 419. *In re: Carey* (1922), 57 Cal. App. 297, 302, 303.

Any classification that may be made, necessarily is arbitrary. The most that can be said is that some may be more arbitrary than others. Horack's Sutherland Statutory Construction (2d Ed.) § 2106—quoted in *Perry Twp.* v. *Indianapolis Power & Light Co., supra,* at page 68.

The desirability, or need for legislation is entirely. for the legislature to determine. The question of its wisdom in adopting a classification is a matter of no concern to the courts. The courts may determine only whether the classification is founded on substantial distinctions in the subject matter, or is so manifestly unjust and unreasonable as to destroy the lawful use of property. *Koplovitz* v. *Jensen* (1926), 197 Ind. 475, 487, 151 N. E. 390; *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 674, 80 N. E. 529.

The first enactment of the legislature of Indiana on this particular subject was Acts 1877, ch. 46, § 6 p. 81, in which the offense is defined as to "frequent gambling houses with females." In the Codification Act of 1881, ch. 67, § 97 p. 195, the offense is defined as to frequent "gambling houses with prostitutes." It was amended in its present form March 9, 1889, Acts 1889, ch. 179, p. 337. It was reenacted as so amended by the recodification Acts of 1905, ch. 169, § 470 p. 693. In each of these enactments the offenses defined are limited to male persons.

The statute has been before this court in a number of cases, and so far as presented, it has been sustained in each case. Among these cases we list the following: *Roberts* v. *State* (1900), 25 Ind. App. 366, 58 N. E. 203; *State* v. *Bridgewater* (1908), 171 Ind. 1, 85 N. E.

715; *Christison* v. *State* (1912), 177 Ind. 363, 98 N. E. 113; *State* v. *Frederick* (1915), 183 Ind. 509, 109 N. E. 747.

By the enactment of this statute in its present form the Appellate Court has held that "It was the intention of the legislature to guard the morals of the citizens so far as it was possible, and to forbid any one from visiting such places of iniquity." *Roberts* v. *State, supra,* at page 369. We approve this statement as to the legislative intent. That the legislatures of 1889 and 1905, with full knowledge of conditions then existing in the state, and the history of the act involved expressly confined this particular offense along with the other offenses defined in the same section, to "male persons," and that each session of the General Assembly since convened has not disturbed the classification, and further that in the four cases hereinbefore cited our Supreme and Appellate Courts have not criticized it adversely, is persuasive of the legality of the classification. The section complained of is but an implementation of the police power of the state, to guard the morals of the citizens, and to forbid any one from visiting such places of iniquity. In such matters the legislature has a large discretion. It may determine when such legislation is needed and the means necesasry to accomplish the intended purpose. *Ayres* v. *State* (1912), 178 Ind. 453, 457, 99 N. E. 730; *Koplovitz* v. *Jensen, supra.* The exercise of a purely police power, when applied alike to all who may be affected in its exercise cannot violate § 23, Art. 1 of the Indiana Constitution. *Ayres* v. *State, supra,* page 458, and cases there cited. *Schmitt, Supt.* v. *F. W. Cook Brewing Co.* (1918), 187 Ind. 623, 626 *et seq.,* 120 N. E. 19.

In the latter case among other things Judge Town-send said at page 635:

"The 'privileges and immunities' section of our Constitution, the 'class' section, and the 'general law' section are not violated if an act is reasonably designed to protect the health, morals or welfare of the public. State v. Wiggam (1918), ante 159, 118 N. E. 684. The legislature must classify in nearly every act which it passes to protect society. To hold that it may not, would be to overthrow nearly all of the laws that are made for the public welfare."

The classification as made is founded on substantial distinctions in the subject matter. It is reasonably designed to protect the morals and welfare of the public. It was deemed sufficient for this purpose when it was enacted. If the morals of the people of the state have changed in the meantime so as to require a more general classification, that matter is for the legislature to consider—not for the courts.

1(c). § 22, Art. 4 Indiana Constitution, among other things, provides: "The General Assembly shall not pass local or special laws, in any of the following enumerated cases, that is to say: . . . (2) for the punishment of crimes or misdemeanors. . . ."

This section of the Constitution is not violated by the involved act, because it applies to all who come within its provisions, generally and without exceptions, and it rests upon an inherent and substantial basis of classification. "A law which applies generally to a particular class of cases is not local or special. The Constitution does not require that the operation of a law shall be uniform, other than that its operation shall be the same in all parts of the state under the same circumstances." *Sarlls, City*

*Clerk* v. *State ex rel., supra,* page 104; *Saraceno* v. *State* (1931), 202 Ind. 663, 666, 177 N. E. 436.

1(d). What we have said above applies to the contention that the statute involved violates § 23, of Art. 4 of the Constitution of Indiana, providing:

"In all the cases enumerated in the preceding Section, and in all other cases where a general law can be made applicable, all laws shall be general and of uniform operation throughout the State." The part of the act in question is not in conflict with this section of the Constitution.

(2) Appellee does not advise us what privileges or immunities belonging to him as a citizen of the United States, are abridged by the questioned part of the act. We presume it must be a privilege of visiting a gambling house, or immunity from punishment therefor should he do so. This court has held that ". . . the privilege and immunity clause applies to privileges and immunities arising out of the nature and essential character of the federal Government, and granted or secured by the Constitution, and the provision of the federal Constitution is satisfied if all persons similarly situated are treated alike in privileges conferred or liabilities imposed. . . . Immunity and privilege are synonymous terms; and mean a right conferred peculiar to some individual or body; a favor granted; a special privilege; in short, an affirmative act of selection of special subjects of favors, not enjoyed by citizens in general." *Hammer* v. *State* (1909), 173 Ind. 199, 202, 89 N. E. 846 (and cases there cited).

The Constitution and laws of the United States do not guarantee to any one a right to visit or frequent

a gambling house nor can any one under such Constitution and laws claim that right as a privilege, or that he shall be immune from regulation by the State. Under its police power the state has denied this claim of right of appellee and all male persons within the state, and this is a matter that concerns only the state. That part of the act involved in this appeal is not forbidden by § 1 of the fourteenth Amendment to the Constitution of the United States.

For the reasons given we think the motion to quash the affidavit should have been overruled. The judgment is therefore reversed, with instruction to the Lawrence Circuit Court to overrule the motion to quash the affidavit, and further proceedings agreeable with this opinion.

Note.—Reported in 79 N. E. 2d 537.

[No. 28,392. Filed May 27, 1948.]

*Thos. H. Shrout,* Prosecuting Attorney, of Bedford, *Cleon H. Foust,* Attorney General, *Frank E. Coughlin,* First Deputy Attorney General, and *Harold V. Whitelock,* Deputy Attorney General, for the State.

*Mellen & Mellen,* of Bedford, for appellee.