W. A. BARBER GROCERY CO., INC., ET AL. *v.* FLEMING, SECRETARY OF STATE, ET AL.

[No. 28,664. Filed January 11, 1951.]

142

*Anderson, Lesow & Gemmer,* and *Dailey, Dailey & Lesh,* all of Indianapolis, for appellants.

*J. Emmett McManamon,* Attorney General; *Frank E. Coughlin, Harold V. Whitelock* and *Norman J. Beatty,* Deputy Attorneys General, for appellees.

JASPER, J.—This is an action brought by appellants seeking a declaratory judgment that chapter 258 of the Acts of 1949 be declared unconstitutional, and for an injunction against the enforcement thereof, and to declare the validity of chapter 169 of the Acts of 1949. Appellants' complaint was filed in three paragraphs, to each of which paragraphs appellees filed answer. The judgment of the trial court declared that chapter 169 of the Acts of 1949 is a valid amendatory measure of section 25, chapter 304, Acts of 1945; that section one of chapter 258, Acts of 1949, is invalid; that the remainder of chapter 258 is valid; and denied the injunction.

Appellants assign as error the overruling of their motion for a new trial, which presents only one question, that the decision of the court is contrary to law.

Chapter 169 of the Acts of 1949 was approved March 8, 1949, and became effective September 18, 1949. It amended section 25, chapter 304, of the Acts of 1945, concerning motor vehicles, trailers, and semi-trailers. Section 1 of chapter 258 of the Acts of 1949 also sought to amend section 25 of chapter 304 of the Acts of 1945. Chapter 258 was approved March 10, 1949, and became effective January 1, 1950. Section 2 thereof sought to amend section 29 of chapter 304 of the Acts of 1945, and section 3 sought to amend section 64 of chapter 304 of the Acts of 1945.

Appellants brief their contentions by reference to each of the three paragraphs of complaint. We shall

answer the contentions as raised by referring to the numbered paragraph of complaint.

Appellants' first paragraph of complaint contends that chapter 258 of the Acts of 1949 attempts to convert the police power measure into a tax measure, that the subject of taxation is not expressed in the title of the act and exceeds the subject and matters properly connected with the 1945 act, and is therefore in violation of article 4, section 19, of the Constitution of Indiana, which provides as follows:

"Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

For a full discussion of this contention, it is necessary to set out the title of chapter 304 of the Acts of 1945, which is as follows:

"An Act concerning motor vehicles, trailers and semi-trailers, concerning the ownership thereof, providing for the registration and licensing thereof, providing for the licensing of persons operating motor vehicles, creating a bureau of motor vehicles, defining its authority, powers and duties, defining penal offenses and fixing penalties, and repealing all laws in conflict and declaring an emergency."

The title of chapter 258 of the Acts of 1949, which amended the last-cited act, is as follows:

"An Act to amend sections 25, 29 and 64, of an act entitled 'An Act concerning motor vehicles, trailers and semi-trailers, concerning the ownership thereof, providing for the registration and licensing thereof, providing for the licensing of persons operating motor vehicles, creating a bureau of motor vehicles, defining its authority, powers

and duties, defining penal offenses and fixing penalties, and repealing all laws in conflict and declaring an emergency."

It is to be noted that the last two cited titles are titles of acts "concerning motor vehicles, trailers and semi-trailers . . ." and "providing for the registration and licensing thereof." The titles of these acts embrace only the subject that is commonly known as motor vehicles, and matters properly connected therewith. It is one general subject. *State* v. *Griffin* (1948), 226 Ind. 279, 79 N. E. 2d 537; *Baldwin* v. *State* (1924), 194 Ind. 303, 141 N. E. 343. The remainder of the act, other than the general subject, may be disregarded and considered as surplusage. *Kelly* v. *Finney* (1935), 207 Ind. 557, 194 N. E. 157. The body of the act of 1949, chapter 258, provides for the registration and licensing of motor vehicles, trailers, and semi-trailers, and appellants contend that the licensing and regulation are purely police measures under chapter 304 of the Acts of 1945, but that, under chapter 258 of the Acts of 1949, the licensing and regulation became a tax measure. Appellants do not question the validity of chapter 304 of the Acts of 1945; in fact, they admit its validity. In *Baldwin* v. *State, supra,* the appellant was convicted of violating the motor vehicle act (ch. 214 of the Acts of 1921). This act amended chapter 300 of the Acts of 1913. Identical constitutional questions were raised in this last-cited case as in the case now before this court. The title of chapter 300 of the Acts of 1913, which was questioned, is as follows:

"An Act defining motor vehicles and providing for the registration, numbering and regulation of same, defining chauffeurs and providing for the examination and licensing thereof, and providing

for punishment for the violation of any of the provisions of this act."

The court, in discussing the title, stated (pp. 305, 306 of 194 Ind., p. 345 of 141 N. E.) :

"It is appellant's contention that nothing in this title would authorize the legislature to embody in the act a provision for the collection of a license fee, or registration fee.

"It is only the subject of the act and not the matters properly connected therewith that need be expressed in the title. The authority to regulate includes the authority to license. *Tomlinson* v. *City of Indianapolis* (1896), 144 Ind. 142, 36 L.R.A. 413; *St. Johnsburg* v. *Thompson* (1887), 59 Vt. 300, 9 Atl. 571, 59 Am. Rep. 731; *Vernor* v. *Secretary of State* (1913), 179 Mich. 157, 146 N. W. 338, Ann. Cas. 1915D 128.

"The title to the act in question, which covers the registration and regulation of motor vehicles, included the subject of licensing or collecting a toll therefor and was sufficient. Note to 52 L. R. A. (N. S.) 949."

The court further said (pp. 308, 309 of 194 Ind., pp. 345, 346 of 141 N. E.) :

"In the case of *City of Terre Haute* v. *Kersey, supra,* it was held by this court that the legislature might authorize a municipality to impose a properly or reasonably graduated tax, in the nature of a toll, for the privilege of using the streets.

"In the above case an ordinance of the City of Terre Haute provided a graduated license or toll charge, which varied according to the size of the vehicle, whether it was drawn by one horse or more, and also as to the use to which the vehicle was put. The same constitutional objections were urged against that ordinance as are here urged; but the court held the ordinance valid and not violative of any constitutional provisions.

"It was further held that the exercise of this power was not the exercise of the police power,

but was authorized under the taxing power. For that reason the fees collected could amount to more than the cost of collection and was a proper method of raising revenue.

"It was also held in the above case that the ordinance in question was not in violation of the constitutional provision requiring a uniform rate of taxation, for the reason that such constitutional provision applied to a property tax based upon values and not to license or toll charges, although the purpose of the latter was to raise revenue.

"If the legislature can authorize such a license or charge to be collected by a city, for the use of the streets, it can provide for the state doing it, for the reason that the legislature has plenary control over the streets and highways, except where it has conferred that power upon the municipalities.

"This method of raising revenue is one frequently adopted and well recognized."

In the case before this court there was a stipulation of fact entered to the effect that, under chapter 304 of the Acts of 1945, and in the year 1948, while this act was still in effect, over $13,000,000 was collected, and that the expenses of operation under this chapter were over $1,000,000. Under chapter 258 of the Acts of 1949, for the year 1950, there would be raised approximately $19,235,000. From these figures, it is plain that both chapter 304 of the Acts of 1945 and chapter 258 of the Acts of 1949 are revenue-raising measures as well as regulatory measures. In *DeHaven* v. *Municipal City of South Bend* (1937), 212 Ind. 194, 199, 200, 201, 7 N. E. 2d 184, 186, 187, the court, in discussing titles of acts concerning public utilities, said:

"Appellee contends that § 16, Ch. 190, Acts 1933, is unconstitutional, in that it violates § 19 of Article 4, of the state constitution. This section provides that,

" 'Every act shall embrace but one subject and matters properly connected therewith; which subjects shall be expressed in the title. . . .'

"The title to the 1913 Act reads as follows:

" 'AN ACT concerning public utilities, creating a public service commission, abolishing the railroad commission of Indiana, and conferring the powers of the railroad commission on the public service commission.'

"Appellee concedes that this might be considered a general title, and does not contend that the subject of taxation would not have been germane to the subject expressed in the title, and might have been very properly the subject of a provision in the 1913 Act, but which was not there included. But of course under the 1913 Act, taxing a municipally owned utilities would not have been proper in-as-much as such utilities were not included in the 1913 Act. So the title to the act was amended in the 1933 Act to include municipally owned utilities. The amended title reads as follows:

" 'An act concerning public and municipally owned utilities, authorizing municipalities to hold, own, acquire, construct and operate utilities and to issue bonds to pay therefor, providing the manner in which such municipalities, may acquire and pay for such utilities, abolishing the railroad commission of Indiana and conferring the powers of the railroad commission on the public service commission.'

"Appellee says that, 'Insofar as the amended title refers to "Municipally owned" utilities, it is restrictive, rather than general; and applies to the "holding," "owning," "acquiring," "construction," "operation," "issuance of bonds to pay therefor," of public utilities by a municipality. It does not cover the taxation of such utilities.'

"We are unable to follow appellee's reasoning in the above quotation from its brief. The rules governing the determination of whether the title of an act is broad enough to cover the subjects mentioned in the act are so well understood, and have been repeated so often by the courts, that it is not

necessary to restate them in this opinion, only in a very general way. In considering the constitutionality of an act in reference to its title, a very liberal interpretation will be adopted, rather than a critical construction calculated to defeat it. It is pointed out in many cases that the 'subject' of an act is the thing about which the legislation is had, and it need not contain an index or an abstract of its various provisions. In the case of *Wright* v. *House* (1919), 188 Ind. 247, 121 N. E. 433, the 1927 Highway Act was questioned. The title to said Act was as follows:

" 'An act creating a state highway commission, providing for the construction, reconstruction, maintenance, repair and control of public highways, and providing for co-operation with the Federal Government in the construction of post roads.'

"The body of the act provides for the levy of taxes to provide funds to pay for such roads. The court, in passing on this question, said (p. 259):

" '. . . the appropriation of money and the levy of taxes to raise funds to pay for such improvement must be regarded as being properly connected with the subject of the act as expressed in the title.'

"The following cases are in point on this question. *White* v. *State* (1924), 195 Ind. 63, 144 N. E. 531; *Baltimore etc.* v. *Town of Whiting* (1903), 161 Ind. 228, 68 N. E. 266; *Bright* v. *McCullough, etc.* (1866), 27 Ind. 223; *Smith et al.* v. *Board of Comm. etc.* (1910), 173 Ind. 364, 90 N. E. 881.

"If the title to the original act was broad and general enough to include the subject of taxation of a privately owned utility, the amended act would be broad and general enough to include a provision relating to taxing a municipally owned utility. Taxing utilities, whether owned privately or by a municipality, is germane to and properly connected with the subject of 'public and municipally owned utilities,' and said section 16, Ch. 190, Acts 1933, does not offend § 19 of Art. 4 of the constitution of Indiana."

The title of chapter 258 of the Acts of 1949, being general and embracing but one subject and matters properly connected therewith, is not in violation of section 19 of article 4 of the Constitution of Indiana. Because of what we have heretofore said, this act is not in violation of section one of the Fourteenth Amendment to the Constitution of the United States, or in violation of article one, section 23, of our State Constitution.

Further, the question is raised as to double taxation. This question has been specifically waived by appellants in their brief.

The contentions of appellants under their first paragraph of complaint are without merit.

Appellants contend under their second paragraph of complaint that section one of chapter 258 of the Acts of 1949 is invalid as violating article 4, section 21, of the Constitution of Indiana, which provides as follows:

"No act shall ever be revised or amended by mere reference to its title; but the act revised, or section amended, shall be set forth and published at full length."

This contention is well taken. They further contend that, because of the unconstitutionality of section one of chapter 258 of the Acts of 1949, the remaining two sections of chapter 258 are not severable from the invalid section, and, because of uncertainty, these sections are in violation of article 4, section 20, of the Constitution of Indiana, which provides as follows:

"Every act and joint resolution shall be plainly worded, avoiding, as far as practicable, the use of technical terms."

This contention raises the question of severability, which is primarily the problem of determining legisla-

tive intent. The rule of severability is set out in *Tucker, Secretary of State* v. *Muesing* (1942), 219 Ind. 527, 530, 39 N. E. 2d 738, 739, in which the court said:

"If, however, a part of an act is invalid for any reason, the court is required to determine whether that which remains is severable before it can be sustained. This inquiry is wholly independent of the sufficiency of the title.

"When a portion of an act is stricken down as unconstitutional, the court is confronted with the problem of determining not only that the remainder of the act is workable, but that there remains such a law as the Legislature intended to enact. If the part stricken down is an integral part of the statute essential to the apparent legislative scheme and plan affecting the subject-matter dealt with in such a substantial manner that to leave the remaining portions stand would accomplish a result not intended by the Legislature, then the entire law must fail. It follows that the problem of separability is primarily a problem of determining the legislative intent. *Ettinger et al.* v. *Studevent* (1942), ante, p. 406, 38 N. E. (2d) 1000."

It was further said by this court, in *School Town of Andrews* v. *Heiney* (1912), 178 Ind. 1, 6, 98 N. E. 628, 630:

"It is an established rule of construction of statutes, that if a construction can be given them which will not render them unconstitutional, that construction will be adopted, even though it may be to eliminate a part of the act, if any portion of the remainder may be disassociated from it as to leave such portion sensible, complete and capable of being executed alike against all similarly situated or affected."

Chapter 169 of the Acts of 1949 amended section 25 of chapter 304 of the Acts of 1945. Following the approval of chapter 169, the Legislature enacted chap-

ter 258 of the Acts of 1949, section one of which attempted to amend the same section of chapter 304 which was amended by chapter 169. Chapter 169 of the Acts of 1949 changed only section 25 of chapter 304 by requiring licensed operators to file their application in their home county. Except for this change, section 25 of chapter 304 was reenacted. Section one of chapter 258 of the Acts of 1949, if valid, would have made only the following change in section 25 of chapter 304:

"and, in accordance with the classification of vehicles in divisions as provided in this act, the application shall show the class to which the vehicle belongs; and, if in the second division, the application shall contain, in addition to the statement of the weight of the vehicle, a declaration by the applicant of the gross weight of the load, including the weight of the vehicle, to be transported or hauled by means of said vehicle at any time during the registration period, which information shall be shown on the registration card issued to the applicant."

Without the last quotation, section one of chapter 258 reads the same as chapter 169 of the Acts of 1949.

Subsection 2 of section one of chapter 169 of the Acts of 1949 provides that every application for the registration of a vehicle of the type required to be registered thereunder, shall contain the following:

"A brief description of the vehicle to be registered, including insofar as the hereinafter specified data may exist with respect to a given vehicle, the name of the manufacturer, the engine number, the serial number, the character and amount of motive power thereof, stated in figures of horsepower, in accordance with the rulings established by the National Automobile Chamber of Commerce; the manufacturer's rated capacity,

if a truck, tractor, trailer or semi-trailer; the type of body, the year-model, manufacturer's shipping weight if a motor vehicle used as a passenger automobile, and seating capacity if a bus, *and such further information as may reasonably be required by the department to enable it to determine whether the vehicle is lawfully entitled to registration.*"

Section 76 of chapter 304 of the Acts of 1945, which is in effect, provides as follows:

"The commissioner is hereby authorized to adopt and promulgate any and all rules and regulations and to prescribe all forms necessary for the carrying out the provisions of this Act and not inconsistent therewith."

Section 2 of chapter 258 of the Acts of 1949 amended section 29 of chapter 304 of the Acts of 1945, which amended section, now in effect, reads as follows:

"(a) The department upon registering a vehicle shall issue to the owner one registration plate for a motorcycle, trailer, semi-trailer, house car, farm tractor used in transportation, and special farm machinery and two registration plates for every other motor vehicle, subject to registration. Every registration plate so issued by the department shall remain the property of the department and shall be subject to be revoked, cancelled or repossessed, as provided by law.

"(b) Every registration plate shall be of appropriate size and dimensions as determined by the commissioner and shall have displayed upon it the registration number assigned to the vehicle for which it is issued, also the letters IND., and the year number for which it is issued, and may have a prefix of one or more letters of the alphabet to appropriately designate the type of vehicle registered. *In the issuance of number plates for vehicles in the second division as hereinafter defined in this Act, there shall be issued to each applicant for registration of a vehicle in such division a letter or other suitable designation to be deter-*

*mined by the commissioner, which letter or designation shall indicate the vehicle belongs in the second division and also the gross weight of the load that may be hauled by means of said vehicle, including the unladen weight of such vehicle fully equipped for service, which letter or designation may be attached to or placed on the regular number plate or it may be separate therefrom as the commissioner may determine; but such designation or letter shall be a part of the identification of the vehicle and shall be displayed on the vehicle at all times in accordance with the regulations governing the display of number plates as provided in this Act.*

"(c) Such registration plate and the required letters and numerals thereon, except *the division number,* the year number for which issued and *gross weight number* shall be of sufficient size to be plainly readable from a distance of one hundred feet in daylight."

Section 3 of chapter 258 of the Acts of 1949 amended section 64 of chapter 304 of the Acts of 1945, which amended section, now in effect, provides for the fees to be paid and divides the vehicles into two divisions, the first being passenger and the second being commercial vehicles, based upon declared gross weight. Subsection (c) of section 3 provides as follows:

"All owners of vehicles of the second division as hereinbefore designated and described that are designed or equipped or used for carrying freight, goods, wares, merchandise, or property of any kind, and *all owners of vehicles of said second division which have been remodeled and are being used for such purposes, and all owners of self-propelled vehicles operated as tractors to the weights of which are added the gross weights of the heaviest semi-trailers with their loads used with such tractors, and all owners of vehicles of said second division which are used for carrying more than seven (7) persons shall pay fees hereunder for each calendar year for the use of the*

*public highways of the state, as hereinafter set forth . . ."*

It is further provided by subsection (c) of section 3:

"The gross weight as so declared by the applicant in the application for registration as provided in this act shall determine and fix the limit of the load, *including the unladen weight of the vehicle fully equipped for service,* that may be transported by means of such vehicle over the highways of the state for the period for which such registration or license is granted. . . ."

We find a definite formula for declaring the gross weight set out in sections 2 and 3 of chapter 258 of the Acts of 1949. Also, from the above-cited sections of the statute, we find provision for registering the vehicles whereby the applicant must apply for registration to the department, through his local county license bureau, on verified forms furnished to him. He must furnish certain information, and such other reasonable information as the department may require, to determine whether the vehicle is entitled to registration. Sections 2 and 3 of chapter 258 of the Acts of 1949, without section one, are workable and severable, and there *remains such a law as the Legislature intended.*

Appellants' third paragraph of complaint contends, first, that the classification provisions of chapter 258 of the Acts of 1949 are in violation of section one of the Fourteenth Amendment to the Constitution of the United States and of article one, section 23, of the Constitution of Indiana; second, that the last-cited chapter does not provide for re-estimate to allow the hauling of greater loads; and, third, that the severe penalties imposed for violation are disproportionate to the nature of the offense and violate

article one, section 16, of the Constitution of Indiana. For an act to be unconstitutional for classification, it must be clearly arbitrary and unreasonable. *State* v. *Griffin* (1948), 226 Ind. 279, 79 N. E. 2d 537; *Denny* v. *City of Muncie* (1925), 197 Ind. 28, 149 N. E. 639. This court said, in *Richmond Baking Co.* v. *Dept. of Treasury* (1939), 215 Ind. 110, 115, 116, 18 N. E. 2d 778, 781:

"On the proposition of the lack of a basis for classification the court will presume the existence of a state of facts which will sustain the legislative act if such a state of facts reasonably can be conceived that would sustain the classification. *Baldwin* v. *State* (1924), 194 Ind. 303, 307, 308, 141 N. E. 343. That authority, and many others, recognize that the determination of the question of classification is primarily for the Legislature, and is never a judicial question, unless the classification is so unreasonable that it cannot be sustained under any circumstances.

"While it may be asserted that the highways of the state are open to the use of all persons upon equal terms, nevertheless, such use is restricted by legislative enactment which may place a tax or license upon the users of the highway, and such users may be separated into classes and taxed differently if any reasonable basis exists for the classification. *Kersey* v. *City of Terre Haute* (1903), 161 Ind. 471, 473, 68 N. E. 1027; *Kelly* v. *Finney, supra; Continental Baking Co.* v. *Woodring* (1932), 286 U. S. 352, 52 S. Ct. 595, 76 L. Ed. 1155.

"This court has been called upon to pass upon the question of classification made by the Legislature in so many cases that it would be useless to undertake a recital of authorities passing upon specific classifications made under circumstances there presented, but as a general proposition it may be said that the state has a right to classify for the purpose of taxation, and this right extends to sub-classifying where there is sufficient basis for the subdivision of the general class. *Continental*

*Baking Co.* v. *Woodring, supra,* which is a case in principle much like chapter 255, *supra.* The basis of the classification there involved was the size of the frames of the trucks. As further authority upon the question of sub-classifying see *Kelly* v. *Finney, supra;* Cooley on Taxation (4th Ed.), Vol. 1, sections 349-350."

See, also, *Eavey Company* v. *Department of Treasury* (1939), 216 Ind. 255, 24 N. E. 2d 268; and *Baldwin* v. *State* (1924), 194 Ind. 303, 141 N. E. 343.

Appellants have no argument concerning the cases last cited, nor do they question the fee schedules.

In the case now before this court they question the classification because they must "estimate" their gross weight. Appellants use the words "estimate" and "declared" synonymously. These words are not synonymous. The statute here in question does not provide for a rough or approximate calculation of gross weight, but does require a declared or known weight for registration, over which weight appellants cannot operate without paying an additional fee for re-registration. This classification, then, becomes as absolute as the manufacturer's weight. It becomes "an actual gross weight" as used in *Kelly* v. *Finney* (1935), 207 Ind. 557, 194 N. E. 157. The classification under chapter 258 of the Acts of 1949 is neither arbitrary nor unreasonable, and does not violate the Constitution of the United States or the Constitution of the State of Indiana.

Appellants next contend that there is no provision for a re-estimate. There is a provision for re-registration. Subsection (c) of section 3 of chapter 258 of the Acts of 1949 provides, among other things:

"Every person so transporting a load in excess of the registered limit of the load for the trans-

porting vehicle *shall be required to pay the differ-ence between the fee paid for registration of such vehicle and the fee for the registration of such vehicle plus a maximum load of a weight equal to the excess load being transported.* Such fee may be collected by any officer authorized by the depart-ment, shall be paid to the department and shall be deposited and accounted for as is other money collected by the department. Until such fee is paid the person transporting such excess load shall not be permitted to move the transporting vehicle."

This last-cited portion of the statute makes it manda-tory to re-register the vehicle and declare the new gross weight if in excess of the weight for which the vehicle was originally registered. It does not mean that the operator must be "caught," as contended by appellants, but does mean, as it says, that the vehicle shall not be moved until there is paid "the difference between the fee paid for registration of such vehicle and the fee for the registration of such vehicle plus a maximum load of a weight equal to the excess load being transported." Thus chapter 258 of the Acts of 1949 does contemplate and make provision for re-registration by declaring the gross weight for any vehicle registered and in which appellants desire to haul in excess of the original registration.

Appellants further contend that the penalties pro-vided are not proportioned to the nature of the offense for carrying over-weight without re-registration of the vehicle, and are in violation of article one of section 16 of the Constitution of Indiana, which section provides:

". . . All penalties shall be proportioned to the nature of the offense."

Appellants admit in their brief that:

"If opportunity for re-estimate and re-classi-fication of fees were afforded by the Act, perhaps

the penalties would not be disproportionate to the offense."

In *Kistler* v. *State* (1921), 190 Ind. 149, 158, 129 N. E. 625, 628, the court said:

"Defining crimes and prescribing the limits of punishment to be inflicted is a legislative and not a judicial function. While it is not impossible, yet it is highly improbable, in this day and age, that the courts will be called upon, or feel authorized, to strike down a law, unless it unmistakably and conclusively appears that it carries a punishment shockingly disproportioned to the offense charged."

From what we have said regarding the re-registering of vehicles, along with the admissions of appellants in their brief, the penalties provided for in chapter 258 of the Acts of 1949 do not unmistakably and conclusively carry a punishment shockingly disproportioned to the offense charged.

Chapter 258 of the Acts of 1949 does not violate article one of section 16 of the Constitution of Indiana.

Appellants call attention to the fact that the Attorney General, in his answer to the three paragraphs of complaint, admitted certain rhetorical paragraphs of complaint which could be fatal to the State of Indiana. After examining the answer of the State, and from what we have heretofore said, the admissions could not be fatal to the State of Indiana.

Having considered all of the questions to which our attention has been called, we find no reversible error.

Judgment affirmed.

NOTE.—Reported in 96 N. E. 2d 108.