MAE WILSON *v.* STATE OF INDIANA.

[No. 1070S253. Filed February 23, 1972. Rehearing denied April 7, 1972. Certiorari to United States Supreme Court denied June 26, 1972.]

4

*Palmer K. Ward,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Martin C. Basch,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted of prostitution under Acts of 1965, ch. 345, § 1, 1967 ch. 23, § 1; Burns Ind. Stat. Ann § 10-4220; I.C. 35-30-1-1, under an affidavit which alleged that she did "* * * unlawfully and feloniously offer to commit an act of sexual intercourse for hire, * * *." Her appeal presents two questions, neither having merit. Her first proposition is that the trial court erred in refusing the following instruction:

"An offer to commit an act of sexual intercourse is in essence an 'attempt to commit a crime.' An attempt to commit some crime can only occur when the act or offer of the person charged has gone to the extent of giving that person the power to commit such crime unless interrupted, and nothing but such interruption prevents the commission of the crime. In order to convict the defendant of the crime charged in the affidavit you must find that she has the present ability to commit the crime charged, by herself, and the only thing that prevented her from committing said act was her arrest by the police. If you find from the evidence that she did not have the present ability to commit the crime charged against her by her acts alone, and without the assistance from some other person, then you must acquit her."

It is the defendant's contention hereunder that the crime charged is in the nature of the offense of *attempting* to commit a crime, and that since the arrest occurred before she reached the "point of no return," no offense had been committed. We do not agree with the major premise. The crime defined by statute is that of "offering" to commit the act, not that of "attemping" to commit it.

The circumstances leading to the charge are as follows:

On July 10, 1969, a vice squad officer of the Indianapolis Police Department was driving south on Central Avenue. The defendant was standing on the sidewalk, and as he approached, she signaled for him to stop, which he did. She asked him if he wanted a date and wanted to spend $10.00. He said that he did and went with her to her apartment nearby. The officer's testimony continues as follows:

> "I went into the apartment. She went to the kitchen and come back with a pan of water and wash rag. I then at that time asked her what the ten dollars was for, and she told me sexual intercourse. At this time I identified myself as a police officer and placed her under arrest." (Tr. p. 65)

From the evidence, we are unable to say with certainty whether the witness welched on a deal or if, as appears more likely, a contract was never culminated. We assume, from the circumstances related by the witness, that his testimony regarding the defendant's explanation of the ten dollar charge was not in the vernacular but rather was the officer's conclusion. However, it was not offered as a literal quotation, and there was no cross examination upon the subject. We, therefore, must conclude that there was a meeting of the minds. This, of course is not determinative of the issue, but is, nevertheless, substantial and probative upon the allegation of an offer. Defendant has cited good authority in support of her contention that an attempt to commit a crime can only occur when the act or offer of the person charged has gone to the extent of giving him the power to commit such crime unless interrupted and that the present ability to com-

mit the crime must be evident. Defendant has called to our attention that she could not commit an act of sexual intercourse without a partner. She has cited no authority, but we believe that few would dispute that this may be taken by judicial notice. It is the offer, however, with which we are concerned and not the fulfilment or attempted fulfilment thereof. To sum up, we concede that it "takes two to tango," but the bid therefore may be proffered without plural involvement. *Williams* v. *State* (1971), 256 Ind. 228, 267 N. E. 2d 840.

The tendered instruction was inapplicable to the matters in issue and was therefore properly refused. *Finton* v. *State* (1963), 244 Ind. 396, 193 N. E. 2d 134; *Nix* v. *State* (1960), 240 Ind. 392, 166 N. E. 2d 326; *Kennedy* v. *State* (1935), 209 Ind. 287, 196 N. E. 2d 316.

Defendant next asked that this Court declare a statute under which she was charged unconstitutional as being violative of Article IV, § 22 of the Constitution of the State of Indiana, the applicable portions thereof being as follows:

"The General Assembly shall not pass local or special laws, in any of the following enumerated cases, that is to say:

\* \* \* \*

[2.] For the punishment of crimes and misdemeanors; \* \* \* "

It is the defendant's position hereunder that the statute, being applicable to females only is special, inasmuch as the acts proscribed thereby could be committed as well by males.

Defendant presents no authority under this proposition, but it appears that the question has been previously determined in *State* v. *Griffin* (1948), 226 Ind. 279, 79 N. E. 2d 537, and we see no significant distinction between that case and the one at bar nor any compelling need to re-examine the position of the court as therein expressed. In *State* v. *Griffin, supra,* the defendant charged that the Act of 1905, ch. 169, § 470, Burns Ind. Stat. Ann § 10-4219 was unconstitutional, inasmuch as it

was applicable only to male persons. Judge Gilkison speaking for this Court by unanimous opinion said:

> "The classification as made is founded on substantial distinctions in the subject matter. It is reasonably designed to protect the morals and welfare of the public. It was deemed sufficient for this purpose when it was enacted. If the morals of the people of the state have changed in the meantime so as to require a more general classification, that matter is for the legislature to consider—not for the courts.
>
> 1 (c). § 22, Art. 4 Indiana Constitution, among other things, provides: "The General Assembly shall not pass local or special laws, in any of the following enumerated cases, that is to say: * * * (2) for the punishment of crimes or misdemeanors * * *.'
>
> This section of the Constitution is not violated by the involved act, because it applies to all who come within its provisions, generally and without exceptions, and it rests upon an inherent and substantial basis of classification.
>
> 'A law which applies generally to a particular class of cases is not local or special. The Constitution does not require that the operation of a law shall be uniform, other than that its operation shall be the same in all parts of the state under the same circumstances.' " 226 Ind. 279 at 290

Finding no error, the judgment of the trial court is affirmed.

Arterburn, C. J. and Givan and Hunter, JJ., concur. DeBruler, J., dissents with opinion.

### DISSENTING OPINION

DeBruler, J.—Appellant is a woman. She offered to commit sexual intercourse with an undercover vice squad officer for ten dollars. She was convicted of violating I.C. 1971, 35-30-1-1, being Burns § 10-4220, and was sentenced to the Women's Prison for a term of not less than two nor more than five years.

The prostitute statute reads as follows:

> "Prostitute.—Any female who frequents or lives in a house or houses of ill fame, knowing the same to be a house of ill fame, or who commits or offers to commit one or more

acts of sexual intercourse or sodomy for hire, shall be deemed guilty of prostitution, and on conviction thereof shall either be fined not less than one hundred dollars nor more than five hundred dollars; and imprisonment not to exceed 180 days or such person may be imprisoned in the Indiana women's prison not less than two years nor more than five years."

Appellant's claim is that this statute is unconstitutional and void on the ground that it violates the following provision of the Indiana Constitution:

"The General Assembly shall not pass local or special laws, in any of the following enumerated cases, that is to say:

[2] For the punishment of crimes and misdemeanors." Art. 4, § 22.

Appellant argues that the prostitute statute is a special criminal law prohibited by Art. 4, § 22, in that it applies only to the class of all female persons and does not apply to male persons. It is clear that the Legislature has, by this statute, erected a classification based upon sex alone. The practical effect of the classification is to subject a woman to imprisonment for five years for committing or offering to commit an act of sexual intercourse or sodomy for hire; while her male counterpart can commit acts proscribed by the same statute without being subject to any criminal prosecution. The issue before this Court is whether this classification is constitutionally infirm thereby rendering the prostitute statute "special legislation" within the meaning of Art. 4, § 22.

In the first place there can be no doubt that this Court has the duty to review the constitutional validity of the classification erected by a criminal statute; and to void that statute if it violates the prohibition in the Constitution against special legislation. *State* v. *Wiggam* (1917), 187 Ind. 159, 118 N. E. 684; *Armstrong* v. *State* (1907), 170 Ind. 188, 84 N. E. 3. In defining and applying the prohibition against special legislation this Court said the following in *Armstrong, supra:*

■■■■■■

"It is well settled that a law is not necessarily general merely because it operates upon all within a defined class, but back of that fact must be found a substantial reason why it is made to operate only upon such class. Classifications when allowable, can only be made upon natural, intrinsic or constitutional distinctions, and special privileges, peculiar disabilities, or burdensome conditions in the exercise of a common right, may not be conferred or imposed upon a class of persons arbitrarily selected from the general body of citizens standing in the same relation to the subject-matter of the law." 170 Ind. at 193.

Applying this test to the prostitute statute, it is obvious to me that the class of women was chosen arbitrarily for the application of this criminal sanction, and that there is no substantial ground upon which to justify singling women out for this treatment. The contrary position must maintain that a rational reason exists to punish a woman who makes such an offer without punishing a man who makes the same offer. But what such reason could possibly be put forward? I believe there are none. In my judgment, the prostitute statute, wherein it makes it unlawful for any female to commit or offer to commit one or more acts of sexual intercourse or sodomy for hire, is void as special legislation.

Secondly, the case of *State* v. *Griffin* (1948), 226 Ind. 279, 79 N. E. 2d 537, cited by the majority supports appellant's contention that the statute is unconstitutional. In that case a statute made it unlawful for male persons to visit a gaming house. There the classification was based solely upon sex and it was found not to violate this same provision of our Constitution. However, the basis of that Court's decision was in part the existence of a different but corollary statute making it a crime for a female person to visit a house of ill fame, and the Court interpreted the phrase "house of ill fame" to include gaming houses. Therefore the Court held that in fact the statute provided for essentially similar treatment for men and women. In the case before us now, there has never been a corollary statute making it a crime for a man to commit or

offer to commit sexual intercourse or sodomy for hire. The basis of the Court's decision there was that the classification "male persons" in the statute complained of dissolved when a corollary statute was found treating "female persons" in the same manner.

Although admittedly not argued by appellant, two recent cases compel a determination of unconstitutionality in this case. In *Troue* v. *Marker* (1969), 253 Ind. 284, 252 N. E. 2d 800, this Court struck down a classification based on sex which had been erected at common law. In that case was abrogated the doctrine which denied a wife the right to recover damages for loss of consortium of her husband. In requiring that the law respond to the demands of our society that women be treated equally with men we said:

> "The common law must keep pace with changes in our society, and in our opinion the change in the legal and social status of women in our society forces us to recognize a change in the doctrine with which we are concerned in this opinion." 252 N. E. 2d at 804.

That arbitrary distinction between men and women at common law prevented a wife from recovering money damages for her loss. The arbitrary distinction between men and women erected by the prostitute statute subjects the female prostitute to five years imprisonment while her male counterpart violates no law. The need for a reasoned and timely response to this appellant's claim of discrimination is even more compelling than that in *Troue* v. *Marker, supra.* In *Reed* v. *Reed* (1971), 92 S. Ct. 251, the United States Supreme Court held that an Idaho statute favoring males over females for the offices of personal representative in probate estates was in violation of the equal protection clause of the Fourteenth Amendment. Under that statute women were not entirely disqualified to serve. Men were to be preferred. It seems to me that if the equal protection clause prohibits that kind of different treatment of women, it would likewise prohibit the State from

punishing female prostitutes and at the same time sanction male prostitution.

That part of the prostitute statute making it a crime for a female person to commit or offer to commit an act of sexual intercourse or sodomy for hire should be declared unconstitutional.

NOTE.—Reported in 278 N. E. 2d 569.